## DEVILLE v. DENNIS.

### No. 1284.

Court of Appeal of Louisiana. First Circuit.

Jan. 22, 1934.

C. V. Pattison, of Lake Charles, for appellant.

McCoy, Moss & King, of Lake Charles, for appellee.

MOUTON, Judge.

Plaintiff claims he suffered a hernia while he was, with other employees of defendant, carrying a sill which was to be used in the construction of a derrick.

In his petition the allegations are, substantially, that they were carrying the sill by means of lug hooks, three or four men being "on the front end," one behind these and with two men in the rear; that on approaching the derrick with the sill, the men on the front end of the sill suddenly, and without warning, dropped their end of the sill, which threw the whole weight of that part of the sill on petitioner and the other man across from him; that the sudden pull injured him in his left side, "and * * * that as a result thereof he sustained and now has a hernia in his left side."

In the original petition, this accident was alleged to have happened January 19, 1933, but in an amended petition, January 17, 1933, was averred as having been the correct date of its occurrence. It is evident from the averments of the petition, above referred to, that the alleged cause of the hernia was due to the sudden and unexpected dropping of the sill by the men at the front end of the sill. This, plaintiff alleges, "threw the whole weight of that part of the sill on petitioner and the other man across from him." Plaintiff does not allege, nor does he testify, that he had undergone straining brought about by the weight

155

of the sill, but it must be inferred from his allegations that his alleged hernia was the result of his straining in his efforts to uphold the sill.

In describing how he felt at the time, after stating this sill was suddenly dropped, his testimony on that subject is as follows: "I got hot in the stomach after that and had a pain and I've been feeling the pain ever since."

This sill, the record shows, was 10x10 or 12x14 inches in circumference and about 20 feet long.

It is shown that usually these sills are carried by six men of the regular crew, but, in the instance under discussion, ten or twelve men were used in carrying the sill, as some men being then idle were used on that occasion, and was being moved, "with ease," as was stated by one of the witnesses.

Plaintiff says he was assisting in carrying the sill with a Mr. Broussard on the same hook, and "opposite him."

Mr. Broussard says this sill was not dropped, that it was laid down slowly; that he felt no drop and no jar; that a man stepped on his foot, he went down, but that plaintiff stood straight. In his statement that the sill was not dropped, but was laid down slowly, Broussard is corroborated by Hebert, Burke, Copeland, Ardoin, Denny, Otto, and Cratcher, who were carrying the sill with plaintiff, and not one of these employees says that it was dropped suddenly and that he had been jarred. All of these witnesses, with the exception of plaintiff, say that they were carrying the sill at about 10 inches above the ground, which clearly indicates that no severe jolt could have been felt when it was laid down, carried, as it was, by about twice the number of men usually required to move such sills.

Plaintiff says when he was injured he then stated to the men at work with him that he had been hurt. The employees on the job with plaintiff deny that they heard any such statement from plaintiff.

The evening plaintiff claims he was hurt he rode in a car with Mr. Dennis, and admits he did not say anything to him about having been injured during the day, but explains that he did not because he thought the pain he was experiencing might have been the result of an operation he had undergone.

On January 18, 1933, the day after plaintiff claims he was hurt, he went to Lockport where he was working under Arch Dennis, brother of defendant herein, but who was dead when this case was tried.

In the course of his testimony, plaintiff was asked if he had not told Mr. Arch Dennis that his right side was hurting him. He denied that he had made that statement.

Mr. Otto, a rig builder who was working at Lockport, testified that plaintiff had told Mr. Arch Dennis that his right side was hurting him.

He also denies that he told Dr. Holcombe the night he claims to have been hurt that it was his right side that was hurting him.

Dr. Holcombe testifies that, at that time, which was his first visit, plaintiff did not complain of any pain in his left side, but was then suffering from an inflammation of a cord in his right groin. It was two days after this first visit that plaintiff complained of some pain in his left side.

Plaintiff is therefore again contradicted by Dr. Holcombe in denying that he had not stated to him that he was suffering from his right side.

It clearly appears from the testimony of most all of the witnesses, with the exception of plaintiff, that the sill they were carrying had not been dropped suddenly or otherwise, and that they had felt no jolt or jar. The fact is that Mr. Broussard, who was opposite to plaintiff as one of the carriers, testifies that there had been no drop, but that the sill had been slowly laid down. Considering that the carriers were almost twice in number of men usually used to carry these sills, even if Mr. Broussard fell when some one stepped on his foot, the sill could have been upheld by the other carriers and laid down with ease, as was stated by one of the witnesses. No one, with the exception of plaintiff, testified to the effect that he had been strained at the time in question.

Dr. Sewell, expert for plaintiff, says: "If the hernia is caused by strain, in other words, if it is a traumatic hernia, he has immediate pain," and that the pain would be acute at the time of the traumatism.

This seems to be the opinion of the other medical experts who testified in the case. There is nothing to indicate that plaintiff experienced any acute pain at the time he says the sill was suddenly and unexpectedly dropped. Although he testifies that he had stated to his fellow workmen that he had been hurt, these men testify that they heard no complaint whatsoever from plaintiff and which no doubt some would have heard if plaintiff had mentioned that he had suffered any injury. The fact is that the very evening of the occurrence plaintiff rode in a car with Mr. Dennis and did not complain of any injury he had received while working on that day. Later, on the first visit of Dr. Holcombe and the same night, he complained of suffering in his right side and made no allusion to being hurt on his left side, that evening.

Counsel for plaintiff refers to the case of Rogers v. Union Indemnity Company, decided by this court, reported in 146 So. page 505.

In that case, we said hernia may be caused by straining, and, finding that it had so originated, judgment was rendered in compensation in favor of plaintiff. It was found in

that case that, in dumping the log which plaintiff claimed had caused the strain and which had resulted in the hernia, we said that plaintiff had immediately complained of being hurt, that some said he looked pale, and that he was apparently suffering; that Burgess, who was doing construction work with plaintiff said he looked pale, was sick, was hurt; and showed him a knot the size of an egg. It was also shown that plaintiff about an hour after the accident had reported his injury to Russell, bookkeeper of the defendant company, who sent him to the physician of the company, was examined by him, and was found to be suffering with a hernia.

In the instant case, there was no complaint of any injury at the time or soon after it is alleged to have occurred, no manifestation of pain or even any indication thereof, and no exhibition of any physical evidence of injury, and no immediate report of hurt or injury, as appeared in the case cited by counsel. If any such proof had been made herein, there would be ground for the contention that plaintiff had actually suffered a hernia which had resulted from straining while he was carrying the sill for defendant. Such proof is, however, totally absent from this record.

Dr. Holcombe in his testimony says: "No trauma will actually produce a genuine traumatic hernia except stab wounds, shot wounds in the muscle in the inguinal area. There are embryonic defects. A man might have a hernia if he never had any traumatism in his life."

There is no evidence in the record from the other medical experts given in contradiction of the statement so made by Dr. Holcombe.

It is plain from that statement that plaintiff did not suffer a traumatic hernia. He might have suffered from embryonic defects that could possibly have caused a congenital hernia which could have developed without any traumatism. This is made clearer by the following questions propounded to Dr. Holcombe by counsel for plaintiff, and his answers thereto, viz.:

"Q. Doctor, if this hernia could have been caused by coughing it could have likewise been caused by a sudden strain? A. It could have been activated by it.

"Q. Just as it could have been activated by coughing? A. Yes."

Obviously, a hernia caused by embryonic defects could be activated by a strain, but plaintiff has failed entirely to show that he had suffered a strain which has resulted in the alleged hernia. Not only by a strain could the hernia have been activated, but also by coughing, as is shown by the evidence of Dr. Holcombe. To a layman, it would seem that such a hernia could be accelerated or activated by other causes of similar trivial character. Personal injuries referred to in Act No. 20 of 1914, § 38, as amended by Act No. 38 of 1918, "include only injuries by violence to the physical structure of the body."

A strain, causing a hernia, would be the result of violence to the internal structure of the body and naturally comes under the operation of that statute, but it could hardly be claimed that a hernia resulting from embryonic defects, hereinabove referred to, would entitle an employee to recover compensation. Even if recoverable, plaintiff could not recover herein, as the proof does not show that he suffered a hernia at the time he was moving the sill.

In the case of Haddad v. Commercial Motor Truck Company, 150 La. 327, 90 So. 666, 673, the court, in concluding its opinion on rehearing and which resulted in the rejection of plaintiff's demand said: "An accident will not be inferred where there is no evidence of any strain, and the evidence adduced is equally as consistent with the fact of no accident, as with the fact of an accident"—citing many authorities in support of that conclusion.

Here there is no evidence of any strain from which an accident may be inferred, and, from the medical experts' testimony to which we have referred, it is as equally consistent to say that there was no accident, as the hernia could have been activated by coughing or by some other cause not mentioned by Dr. Holcombe.

In the case above cited, the court said, even accepting the theory of plaintiff as probable, this "would not suffice; for the matter would still be involved in grave doubt, so much so that the court could not know with any sort of certainty that the defendant was liable."

In that case which was under the Workmen's Compensation Act, as this case is, the court said it had to be established with legal certainty, as in all other cases.

The theory of plaintiff in this case that a strain caused the hernia is at most probable, and, even if it were, the matter would be involved in grave doubt, and would still fall short of the requirement that such a case must be made out with legal certainty.

The case is not so established here, and we therefore find that the judgment below correctly rejected the demand of plaintiff, and it is therefore affirmed, with cost.