## TAYLOR v. KIRBY LUMBER CO.

### No. 1874.

Court of Appeal of Louisiana. First Circuit.

June 14, 1938.

Elmer L. Stewart, of DeRidder, for appellant.

Cline, Thompson, Lawes & Cavanaugh, of Lake Charles, for appellee.

LE BLANC, Judge.

The plaintiff, King Taylor, has instituted this suit to recover compensation for total, permanent disability, alleged to have been produced by a traumatic, inguinal hernia on the right side, which he alleges he sustained while in the course of his employment by the defendant, Kirby Lumber Company.

Plaintiff alleges in his petition that on September 13, 1937, whilst engaged in the performance of his duties as an employee of the defendant which was building a tramway on the north side of Anna Coco Creek in the Sabine River bottom in the Parish of Vernon, he was setting scrapers or slips, and while he was pulling a slip the point of which hung upon a roof, he was given a severe jerk which threw him forward and at the same time caused him to suffer a severe pain in the abdomen and particularly on the right side and which resulted in the hernia he complains of. He alleges that this happened at about 11 o'clock in the forenoon and that he immediately reported his injury to his foreman. He avers further that he has always performed hard saw mill labor and that prior to the said injury he complains of, had been examined by a number of doctors at different times among the different lumber companies and had always been found to be in perfect physical condition. He then sets out that his injury has caused him to be permanently and totally disabled from performing work of any reasonable character and as a consequence he is entitled to receive compensation at the weekly rate of $8.54, that being 65% of his weekly wage, for a period not to exceed 400 weeks. He prays for judgment accordingly.

The defendant for answer admits that plaintiff was employed as alleged by him but denies that he sustained the injury he complains of and that he is permanently and totally disabled to do work of any reasonable character. It avers on the contrary that since he had voluntarily left its employ two days after the alleged accident, he had been gainfully employed, doing the same kind of work that he did before. As an alternative plea the defendant sets out that in the event it be shown that plaintiff is presently suffering from a hernia and attendant disability, if any exist, such hernia or disability has no causal connection with any accidental injury sustained by him while in its employ and therefore it is not liable to him for any compensation whatsoever.

On the issues as thus made up by the pleadings, the case went to trial in the district court and there was judgment in favor of the defendant and against the plaintiff dismissing his suit. From that judgment he has taken this appeal. As the suit was brought and tried in the lower court in forma pauperis, there were no costs involved or taxed by the judgment.

As a witness in his own behalf, the plaintiff testified in support of the allegations made in his petition. He states that on the date alleged, he was loading slips; that they were cutting a clay bank in which there were some roots, and that a slip got caught

in the roots causing him to sustain a sudden jerk and that he experienced a pain in his abdomen on the right side. He says that he told the boys who were working with him that he had been hurt and then "went to the water keg, got a swallow of water and set around a minute or two." In just a few minutes the foreman came up and he told him that he had hurt himself. He fixes the time at somewhere between 11 o'clock and 11.20. The crew knocked off at 11.30 for dinner, and after dinner the plaintiff returned to work and worked the whole afternoon. He worked two days thereafter and on the third day rode out on the train to go to work, for a distance of six miles and alighted of his own free will, to go to a contractor's camp where he reluctantly states that he had hope of getting another job.

It appears from the preponderance of the testimony that the foreman under whom plaintiff had been working was to be changed and that he did not intend to continue at his work under the new foreman who was to take charge. He obtained the information that there was to be a new foreman, while on the train going to work on the day just referred to, and we are satisfied from the testimony that that was the reason he left the train as stated and walked all the way to this contractor's camp hoping to secure other employment. On learning that there was no work for him there, he walked back to his home and as far as the record shows, made no further complaint about his alleged hernia nor did he seek any medical attention.

The next thing we learn is that plaintiff went all the way to Kirbyville, Texas, to seek employment with the Trout Creek Lumber Co., at that place. He had to stand a physical examination by that company's doctor, and although the doctor's report shows that his right inguinal ring was a little enlarged, he nevertheless was accepted "for all kinds of work" and was actually put to work on September 27, 1937, fourteen days after the date on which he alleges he had sustained a hernia. Numerous witnesses testified as to the character of work performed by him in this new employment, all agreeing that it was hard manual labor. He did not miss a single day except Sundays, for four weeks and apparently left the job of his own free will and accord. His testimony that he left because he could no longer stand the strain occasioned by his injury stands alone.

A rather striking fact, in our opinion, is, that although the plaintiff claims that he was hurt when he sustained the jerk which he says produced the hernia, he does not seem to have suffered any of the violent pains which usually attend such an injury, neither did he experience or show the other symptoms which generally prevail, such as pallor and vomiting. He says that he was nauseated, but admits that he never did vomit. There is considerable uncertainty about the complaint he made to any fellow employees or to his foreman. The latter does state that he told him that he had been hurt, but that upon advising him to seek medical aid plaintiff told him that he did not think it was worth while.

We have the testimony of three doctors in this case. Dr. W. F. McCreight of Kirbyville, Texas, is the physician who examined the plaintiff at the time he was seeking employment with the Trout Creek Lumber Company. This doctor testified that he gave plaintiff a very thorough examination and found him to be sound in all respects with the exception of the enlargement of the inguinal ring as already stated. He states that this was merely a potential hernia which might develop into an active hernia under heavy strain or work. As we have seen in his employment with this company plaintiff performed that kind of labor for four weeks and at no time did he ever make any complaint of any kind. Dr. McCreight is of the positive opinion that at the time he examined plaintiff on September 27, 1937, he had no hernia and he made no reservation whatever as to the kind of work plaintiff might be engaged in.

Dr. F. R. Fraser testified as a witness for the plaintiff. It is rather difficult to follow the testimony of this witness and he himself seemed a bit reluctant to testify as apparently he had no records of the examinations he made of the plaintiff and was unable to refer to the dates. It is proper to state however that in the first examinations he made he had some suspicions about there being a dilated ring but hesitated to pronounce it a hernia until the plaintiff had been examined by some other physician. He advised the plaintiff to see Dr. W. A. Berwick, examining physician for the defendant company and as Dr. Berwick testifies that he examined him on October 27, 1937, it is reasonable to assume that the examination made by Dr. Fraser took place, as he states, about October 26, the day previous. He made subsequent ex-

aminations, the last, just a few days preceding the trial of the case, and states that at that time plaintiff was suffering with a direct inguinal hernia on the right side. He makes no attempt however to associate the condition which he found at that time, which was about the middle of February 1938, with the alleged strain or jerk plaintiff says he sustained on September 13, 1937.

Dr. Berwick states that upon his examination he found the right inguinal ring slightly dilated, only to the extent where he could insert the point of his index finger. He put the plaintiff through the usual tests and found no protrusion whatever of the viscera, which in other words is the real hernia. He is of the confirmed opinion that the condition which he found could not be classed as a hernia, either complete or incomplete, and that it would not interfere with his work as a laborer doing that type of work which he was performing on September 13, 1937. At the time he examined the plaintiff he did not feel that he was in need of any medical attention either operative or otherwise. Dr. Berwick's opinion as to plaintiff's ability to perform that type of work was fully vindicated in the latter's activity in such work for four weeks with the Trout Lumber Company in Texas.

Viewed in the light the most favorable to the plaintiff therefore, the most which the testimony reveals is that the plaintiff, on September 27, 1937, had a slight enlargement of his right inguinal ring which is referred to as a potential hernia, by no means a condition which disabled him from performing any kind of work whatever. It was only a long period of time after he had severed his employment with this defendant, and had worked at hard labor for another employer, that he had one doctor to testify that he was suffering from a direct inguinal hernia, the injury for which he seeks to recover compensation from the defendant.

We are always mindful of the liberality which our law accords an employee in suits of this character, but we must also adhere to the jurisprudence that such a case does not present an exception to the rule that a plaintiff, in order to succeed, must make out his case to a legal certainty. This, the plaintiff in this case has failed to do. He not only failed to prove that he had sustained a hernia, on the date and in the manner as set out by him in his petition, but he also failed to show that even if he is presently suffering from such an injury, that it had any causal connection with the accident alleged to have occurred on that day.

We are of the opinion that the judgment of the district court which dismissed his suit is correct and it is accordingly affirmed.