## VALLERY v. HELIS.

### No. 2175.

Court of Appeal of Louisiana. First Circuit.

Dec. 12, 1940.

Rehearing Denied Jan. 14, 1941.

Writ of Error Refused March 3, 1941.

Chas. C. Jaubert, of Lake Charles, for appellant.

Walter J. Burke and Lawrence Simon, both of New Iberia, for appellee.

DORE, Judge.

This is a suit for workman's compensation, wherein plaintiff alleges that on or about March 7, 1939, while in the employ of the defendant, engaged in performing services as a truck driver, at a monthly salary of $165, he suffered an accidental injury which resulted in a right inguinal hernia, rendering him permanently and totally disabled from doing the work for which he is fitted by training and experience, and entitling him to compensation at the maximum rate of $20 per week for a period not to exceed 400 weeks, plus the medical expenses provided for by the compensation statute.

It is alleged in effect that at about 2:00 o'clock in the afternoon at defendant's New Iberia oil field, plaintiff and another employee, Robert Myers, were engaged in lifting an oil field pipe onto a truck when plaintiff felt a sharp pain in his right groin forcing him to drop his end of the pipe and to sit down for a while until the pain subsided; that the pipe was then placed on the truck by Myers and other employees, and the only work performed by plaintiff during the remainder of the working day, ending at 3:30 P. M., was the driving of the truck into the garage.

The plaintiff sets forth that he made no report at the time of the accident and continued to work on his truck, avoiding heavy lifting as much as possible, for the next ten days, but that due to the return of this pain he was forced to report to his employer's doctor on March 17th; that the doctor advised him that only a slight injury was shown and sent him back to work, where he remained until April 9, 1939, at which time he was laid off with other employees; that on May 6, 1939, while cutting grass in his yard he again felt the pain, and thereupon reported to Dr. C. V. Hatchette of Lake Charles, who found that he had a hernia and suggested that he ask his employer to furnish an operation; that he immediately reported to his employer's doctor, Dr. Dauterive, who reexamined him, affirming his prior diagnosis and denying the necessity of an operation; that on the same day he consulted Dr. Flory, who confirmed Dr. Hatchette's diagnosis of a slight right inguinal hernia; that plaintiff thereupon explained his condition to the superintendent at defendant's New Iberia oil field, who stated that he would write to the main office about it; that several days later plaintiff upon instructions from his employer reported for examination to Dr. Moss of Lake Charles, who advised him that there was something wrong but nothing serious and that he would report the condition to the main office and that plaintiff would probably be taken care of; that about eight weeks later plaintiff was called to Baton Rouge by his employer, was examined and passed by Dr. Tucker, and sent back to work; that after five days of work the superintendent, Mr. Snyder, advised plaintiff that he was forced to discharge him on instructions from the head office to the effect that

there was something wrong with plaintiff's stomach; that shortly before trial, he was examined by Dr. Holcombe of Lake Charles, who found that he had a hernia and was disabled from performing oil field work or other hard manual labor; that this same Dr. Holcombe had previously examined him several times when he worked for the Magnolia Petroleum Company (his employer prior to being employed by defendant) and had always passed him.

The defendant admits that plaintiff was employed by him at the time of the alleged injury, and prior thereto, and admits the other periods of employment set forth by plaintiff, and also admits that he was receiving the wage of $165 per month. However, defendant denies that plaintiff sustained the accidental injury alleged, averring (1) that plaintiff has no hernia, and (2) that if it be found that he is suffering from hernia, such hernia was not caused by any accident sustained in his employment by defendant or connected therewith. In the alternative, defendant pleads that should the court find that plaintiff is suffering from a hernia attributable to an accident sustained in the course of his employment, plaintiff should be made to minimize such injury by submitting himself to an operation.

On trial of the case, the District Court rendered judgment in favor of the defendant, dismissing plaintiff's suit, and the plaintiff now prosecutes this appeal.

A review of the evidence reveals that some of the allegations on which plaintiff relies are either admitted or well proved. There is no question but that he was employed by defendant at a salary of $165 per month as a truck driver on March 7, 1939, and until April 9, 1939, and prior thereto, at the New Iberia oil field, and that he was laid off on April 9, 1939, until some weeks thereafter when he was again employed by defendant at the Baton Rouge oil field for a period of five days, being then again laid off, this time on instructions from the main office apparently based on advice of Dr. Tripoli, the main office medical advisor. It is unquestionably true, also, that on or about March 17, 1939, plaintiff reported to Dr. Dauterive, the New Iberia office doctor, for examination, complaining of pain in his right abdominal region, and it is also shown that he was examined the next day, March 18, 1939, by a doctor of his own choosing, Dr. Flory, and again on May 6, 1939, by Dr. Hatchette of Lake Charles, and on the same day by Dr. Dauterive and Dr. Flory, and that later, on instructions from his employer, he was examined by Dr. Walter Moss of Lake Charles; and at later dates he was also examined by Dr. Tucker, Dr. Holcombe and Dr. Tripoli.

The allegations of plaintiff which are disputed are (1) do these various examinations show that plaintiff is now suffering from a right inguinal hernia, and (2) if it is so shown, is it proved that such injury was caused by the accident alleged in the petition?

Dr. Dauterive testified that he examined plaintiff on March 17, 1939, May 6, 1939, and again at the trial, and on each occasion found that plaintiff was not suffering from hernia or any disabling injury, but merely had an enlarged right inguinal ring.

Dr. Flory testified that he examined plaintiff on March 18, 1939, and again on May 6, 1939, and that his first examination revealed nothing wrong except a slightly enlarged right inguinal ring, but that the second examination showed a complete right inguinal hernia. He states further that his second examination was more thorough than the first, and that possibly he made a wrong diagnosis in the first examination, and that plaintiff might have been suffering from the hernia at that time.

Dr. Hatchette testified that he examined the plaintiff on May 6, 1939, and found a slight right inguinal hernia.

Dr. Moss testified that he examined plaintiff on May 16, 1939, and found nothing but an enlarged inguinal ring, and Dr. Tripoli states that he examined plaintiff on October 16, 1939, and found that he had relaxed or larger rings than what is referred to as normal, but that he did not find any hernia.

Dr. Holcombe testified that he examined plaintiff on two occasions, the first time during the latter part of October or the first part of November, 1939, and the second time about the middle of December, 1939, and found that plaintiff had a well developed indirect right inguinal hernia. He testified further that a few years prior when plaintiff was working for the Magnolia Petroleum Co., which appears to have been plaintiff's employer immediately prior to going to work for defendant, he on several occasions examined plaintiff and found him to be free from hernia or any other disability.

Dr. Tucker did not testify but his report, which is in the record, shows that he

examined plaintiff on August 28, 1939, for work in the Baton Rouge field and found him to be physically fit and normal in every way.

All these doctors appear to be learned, experienced and highly regarded in their profession, and the fact that Drs. Dauterive, Moss, Tripoli, and Tucker, on the one hand, testify that plaintiff has no hernia, and Drs. Flory, Hatchette, and Holcombe on the other hand say that he has a right inguinal hernia, creates a serious difference of expert opinion which is difficult to resolve one way or the other, especially in view of the fact that the medical testimony stands practically alone, not being supplemented by lay testimony showing plaintiff's daily reactions from the date of his alleged accident. From this testimony, however, it appears that plaintiff is suffering from either a slight inguinal hernia or from an abnormal right inguinal ring, a condition in either case which would probably become worse should plaintiff engage in oil field work, and, if that condition was caused by an accident in the course of his employment by defendant, defendant should be made to have the condition corrected and to pay plaintiff compensation.

None of these doctors could definitely point out any particular cause of plaintiff's condition and practically the only evidence we have on which to conclude that the condition is traceable to the accident allegedly occurring on or about March 7, 1939, is the testimony of plaintiff himself. That testimony might be sufficient if it were not contradicted. However, the only eye witness named by plaintiff is his co-employee, Myers, who testifying for defendant not only flatly contradicts plaintiff's statement that plaintiff was hurt in his presence, but goes further and states that he does not recall ever lifting an oil field pipe with plaintiff on March 7, 1939, or at any other time. Myers does admit that on March 17, 1939, at the request of plaintiff, he took him to Dr. Dauterive for examination, but adds that this is the only time when plaintiff complained of any pain, and that at that time he did not say that he had been hurt. It is true that Myers at the time of trial was an employee of the defendant, but apparently his testimony was given some weight by the trial judge, and we feel that he did not err in doing so. It is true, too, that the record contains a report by the superintendent showing that the accident happened as set forth by plaintiff, but from the testimony of the superintendent as well as from that of his office man, Carter Keith, it is difficult to determine where the information on the report was derived, and it appears that all data in the record, including this report, bearing on the history of the accident, is supported only by the uncorroborated testimony of plaintiff.

The trial judge lays stress on the fact that plaintiff did not immediately report his alleged accident and continued to work for ten days thereafter, and also on the fact that plaintiff was willing to work in the Baton Rouge oil field even after he had been informed by Dr. Hatchette and Dr. Flory that he had a hernia, and on the further fact that even subsequent to his dismissal at Baton Rouge, he wrote defendant's main office stating that his work at Baton Rouge had had no ill effects on him, that he was strong and healthy, and desired to be re-employed. Of course, these actions by plaintiff are explained somewhat by the fact that he was anxious to earn a living for himself and family, but, at the same time, we can appreciate the trial judge's viewpoint that these actions create suspicion both as to the alleged accidental injury and serious result thereof. We are more bothered, however, by the lack of corroboration of plaintiff's testimony as to the actual accident, and as to his reactions immediately thereafter and during the ensuing days, than by plaintiff's aforesaid actions. It is true that plaintiff explains his silence again by stating that he had an earnest desire to continue work as long as possible so as to amply provide for his family, but it seemed reasonable to suppose that some of his associates at work or away from work would have had some inkling of his injury, either by observation of him and his actions or by being told by him that he suffered pain, without seriously endangering his employment; but plaintiff has failed to produce a single witness who can testify as to the happening of the alleged accident or as to his reactions at that time and subsequent thereto.

■ ■ Whether or not plaintiff sustained an accident in the course of his employment causing injury is a question of fact. The trial court found from the evidence that there was no causal connection between plaintiff's employment by defendant and his present condition. After a careful review of this record, we cannot say that the trial judge committed any man-

202

ifest error in that finding of fact, and it is our conclusion that the plaintiff has failed to make out his case to that legal certainty required, as set forth in our decision in Taylor v. Kirby Lumber Co., 182 So. 169.

The judgment appealed from is affirmed.