This is a suit for compensation under the Workmen's Compensation Law of Louisiana, No. 20 of 1914, as amended. There is the usual conflict of medical testimony. The lower court which heard and saw the witnesses, as well as the plaintiff, rendered judgment for plaintiff, with the following reasons:
"Plaintiff sues the Louisiana Highway Commission and the Travelers Insurance Company, in solido, for weekly compensation of $9.75, not to exceed 400 weeks, for injuries received on May 6, 1940, as an employee of the Highway Commission, and while performing services for which he was employed.
"Plaintiff was being paid a weekly wage of $15.00 and at the time he was injured was engaged in assisting to lift a metal culvert to place it in a ditch across the highway when the strain injured him to such an extent that he was forced to let go of the culvert and catch his sides because of the severe pain and he exclaimed that he was hurt. His petition charges that the strain caused by lifting the culvert `seriously and permanently impaired his internal organs, including his large and small intestines, and attached and surrounding parts, and seriously and permanently impairing the muscles, ligaments, tissues and nerves in both sides of his lower abdomen, causing and producing ruptures and hernias on both sides, and seriously and permanently injuring and impairing his sexual powers, nerves and kidneys.'
"Defendants admit the employment of the plaintiff and the weekly wage of $15.00, but deny the injury and further deny that plaintiff is now suffering from a hernia as a result of said injury.
"The issue, therefore, is one of fact. Did plaintiff receive an injury and, if so, is he now disabled as a result of the injury?
"At the time plaintiff claims to have received the injury, he was at one end of a metal culvert helping to place it in a ditch across the highway. Three persons were lifting the culvert, one about the middle and one at each end, and while in the strain of lifting, plaintiff let go his hold on the culvert, caught his sides, and told the foreman that he had hurt himself. The foreman did not testify, but other witnesses who were present did testify that plaintiff dropped the end of the culvert he was lifting, stated he had hurt himself, did not work any more, but *Page 685 
immediately left for the doctor with the foreman.
"The evidence of an injury is not disputed by defendants' witnesses. Defendants did not even call the foreman to show that plaintiff did not receive an injury at the time and in the manner shown by his witnesses. We must hold, therefore, that plaintiff received an injury as claimed. His evidence preponderates in favor of that fact. It is uncontradicted. The extent of such injury and the permanency of same we shall endeavor to correctly determine from the evidence of both lay and expert witnesses.
"Immediately following the injury, plaintiff was brought to Dr. John T. Mosley, of Winnfield, and at that time the local physician of the Highway Commission, for examination and treatment. Dr. Mosley made a physical examination of plaintiff but found no evidence of the existence of a hernia or evidence of any serious injury to any of the parts complained of as being injured. He suggested that plaintiff use a suspensory or support of some kind and had plaintiff report later for further examinations until Dr. Mosley had examined plaintiff eight or ten times, the last being on the day of trial. About May 23rd, after plaintiff was injured on May 6th, Dr. Mosley had plaintiff go to Alexandria to Drs. Simmons, Rand Barber for examination by them to determine the extent of the injury of the plaintiff and ascertain if he was suffering from a hernia. When Dr. Simmons saw plaintiff, he made up his mind that plaintiff did not have a hernia but there was a slight bulging in the lower part of plaintiff's abdomen above the rings. Dr. Rand did not think plaintiff had a hernia, but there was a tendency to bulge at the rings, which is a condition commonly known and found in poorly developed persons. Dr. Barber found no evidence of hernia nor any bulging on either side of the lower part of plaintiff's abdomen.
"On or about July 22, 1940, defendants had plaintiff examined by Dr. W.P. Addison, Jr., of Shreveport, who found that plaintiff did not have a hernia but was suffering from prostatitis and vesiculitis, neither of which was caused by the injury plaintiff received.
"The expert witnesses for defendants were each unable to find that plaintiff had developed a hernia as a result of the injury he received. Those who found a tendency of plaintiff to bulge or protrude about the rings thought it to be a normal condition of plaintiff's physical make-up. They did not all find the bulge of his anatomy testified to by some. To the contrary, the expert witnesses for plaintiff find that he is suffering with what some term an incomplete hernia.
"Dr. O.C. Rigby, of Shreveport, examined plaintiff on July 22d and again on August 16, 1940, and the last time on January 23, 1941. He found plaintiff had a separation of muscles on the right side in the inguinal region and that he was suffering from an incomplete hernia.
"On or about the 20th of August, 1940, plaintiff was admitted to the Charity Hospital, at New Orleans, as a patient for examination and treatment. The extract from the Charity Hospital filed in evidence, as provided in Act No. 90 of 1938, shows that he was there about eighteen hours and that in the right inguinal region of plaintiff the external ring was found to be dilated, very thin and there was a tender mass along the direction of the inguinal canal and also a relaxation of the ring on the left side.
"Dr. D.H. Alverson, of Shreveport, examined plaintiff on January 24, 1941, and found him with an incomplete hernia which he said is produced by the viscera having passed through the internal inguinal ring down the canal and is pressing and has enlarged the external inguinal ring.
"Dr. J.L. Woodall, of Colfax, examined plaintiff in September or October, 1940, and again on the day of trial and he says that plaintiff has a slight protrusion in the right abdominal region, which he considered an incomplete hernia.
"Dr. C.S. McDonald, of Jonesboro, examined plaintiff on the day before the trial and he says that he is suffering with an incomplete hernia. There is a bulging down the inguinal canal on the right side about four or five inches long and two and one-half inches in diameter.
"One thing we are convinced of by the expert evidence and that is that plaintiff does not have a developed hernia. If he be suffering with a hernia, it is in the undeveloped state or incomplete form.
"Plaintiff worked as an employee of the Louisiana Highway Commission for a long time before the injury complained of and he was able, according to the evidence, to do the manual labor required of him during that period of employment. Since he *Page 686 
received the injury complained of, he has not been able to do manual labor such as he has done formerly, according to the witnesses who have known him prior to and since the date of injury. Since the injury, he has been wearing a brace or truss to hold his abdomen to enable him to move about as a man physically normal. He claims to suffer with pain since the injury and is unable to lift or do any manual labor because of the inconvenience and increased pain it causes.
"Defendants offered, filed and showed during the trial a moving picture of plaintiff moving about in the field among others picking peas to show his ability to work. Plaintiff and his witnesses who saw the picture denied that he was the party engaged in picking peas at the time the picture was made. They contended that it was his brother, Lonnie, instead of plaintiff. Plaintiff is well known to the trial Judge and while the picture was being shown, we did our best to recognize plaintiff as one of the parties engaged in the pea-picking, but were unable to do so. We could recognize plaintiff's father as one of the parties, but we were unable to recognize plaintiff in the picture. Plaintiff admitted he had picked a few peas for table use but not as a regular hand in gathering the pea crop on the farm of his father where the picking of the peas was being done at the time the picture was made.
"Defendants did not file a brief with the court, but in oral argument they claim that the plaintiff is malingering and in support of that claim, urge that plaintiff knew he would soon be discharged by the Highway Commission and hoped to be continued on its payroll by making the claim he has made. This is not supported by lay testimony and courts are slow to declare one a malingerer unless such fact is conclusively shown.
"In Nash v. Solvay Process Company [La.App.], 189 So. [193], 502, the Court said:
"`With these undisputed facts before us, it will take evidence strong enough to conclusively prove that he is a malingerer before we would be justified in so finding; and certainly evidence of medical experts alone, which is contradicted in every respect by other medical expert testimony, and all the medical testimony emanating from medical experts of equal standing is not sufficient to conclusively prove that plaintiff is a malingerer.'
"The above pronouncement of the Court is applicable to the case now being considered and defendants, having failed to conclusively prove that plaintiff is a malingerer, we are not justified in holding that he is a malingerer.
"Plaintiff and his lay witnesses testified that before he was injured on May 6th, 1940, he performed manual labor without complaint and that since he received the injury complained of, he has not been able to perform any labor without complaint and apparent suffering. It seems that one may have a direct, incomplete hernia and that such condition may result from an injury.
"In the case of Johnson v. Hillyer, Deutsch, Edwards, Inc. [La.App.], 185 So. [652], 655, the Court said:
"`Our consideration of all the testimony satisfies us that plaintiff is suffering from a direct inguinal incomplete hernia, and that this condition rendered him unable to do hard manual labor at the time of the trial. If, as testified by the three physicians and plaintiff himself, an attempt on his part to do hard manual labor would cause pain and a possible complete hernia, there is no reason for him to undergo that pain and incur that danger.'
"If plaintiff has an incomplete hernia which causes him pain when he attempts to do manual labor, then there is no reason for him to undergo such pain and incur the danger of causing a complete hernia by attempting to do hard manual labor. The expert witnesses for the defendants say that plaintiff does not have any evidence of a hernia, either complete or incomplete. Most of them do say, however, that he does have a bulging or protrusion along the inguinal canal or lower part of the abdomen which is due to the weak and poorly developed condition of plaintiff. The expert witnesses for plaintiff say this bulging is an incomplete hernia which might be caused by a strain separating the muscles and allowing the viscera to protrude down the inguinal canal to the outer ring. They are corroborated by plaintiff and his lay witnesses who say that plaintiff was injured in attempting to lift a culvert on May 6, 1940; that before that date plaintiff did perform hard manual labor without complaint and since the date of the injury, he has been unable to perform any hard manual labor. *Page 687 
"Our conclusion from all the evidence is that plaintiff is entitled to recover compensation, in solido, from defendants in the weekly amount of $9.75 from date of injury and not to exceed a period of 400 weeks and all costs of suit and that will be the judgment of the Court.
"The fees of the attorney for plaintiff are fixed at one-fifth of the amount of compensation collected by plaintiff from defendants.
"The expert witnesses' fees of plaintiff and defendants should be made a part of the costs of Court, but we are unable to fix the amount of such fees in this case except upon rule to show cause. Some of the medical experts attended court and others appeared before notaries and gave their testimony.
"Judgment to be signed based upon the reasons herein given."
 "Supplemental Reasons Amplifying Paragraph of Original Reasons for Judgment.
"We stated in our original opinion as follows:
"`Plaintiff is well known to the trial Judge and while the picture was being shown, we did our best to recognize plaintiff as one of the parties engaged in the pea-picking, but were unable to do so. We could recognize plaintiff's father as one of the parties, but we were unable to recognize plaintiff in the picture.'
"The reason we were unable to recognize plaintiff in the picture was because of the shadow and dimness of the picture. We were unable to determine whether it was plaintiff or someone else.
"We recognized the father of plaintiff by his movements in the picture rather than by his features."
In this court we have been requested to allow the picture claimed to have been taken of plaintiff while picking peas to be run for the benefit of the court. The evidence in the record makes it very uncertain that plaintiff was the man of whom the picture was taken and, since the members of this court do not personally know plaintiff, the pictures would not be of any assistance to us in rendering our decision. Furthermore, the fact that he did pick some peas would not bar his recovery, if he is otherwise entitled to recover.
We have carefully studied the record and are unable to conclude that there is error in the judgment of the lower court. It is therefore affirmed, with costs.