TATE, Judge.
Plaintiff Ashworth was held totally and permanently disabled by the District Court by reason of a knee injury. He waIs awarded 400 weeks workmen’s compensa *682 tion benefits at the rate of $28.92 per week, conditioned upon his accepting an operation tendered by defendant employer, which allegedly will correct the disability resulting from the ruptured or torn medial (inside) semi-lunar cartilage (sometimes called the medial meniscus) of his right knee.
Ashworth devolutively appealed from this judgment in his favor, requesting that it be amended to hold that his present disability also results from a right .inguinal-hernia, a lower back injury, and a right hand injury allegedly resulting from the same accident; and also, to strike out the judgment’s requirement that Ashworth submit to the major surgery recommended by the physicians to cure his knee disability. Defendant employer did not answer the appeal.
It is now undisputed, and indeed there is no evidence at all to the contrary, that Ash-worth in the course of his employment at defendant’s paper mill in Elizabeth, La., suffered an industrial accident. One leg fell up to his groin, or the fork of his body, into a hole between heavy rolls of paper, and while so .fallen, a moving heavy roll of paper (weighing about 300 lbs.) caught him and crushed his right front and back between it and other rolls of paper. .
Without recapitulating the evidence, we may simply - state that the vast preponderance of the medical evidence indicates no residual disabling- effects from the back sprain and finger injuries initially sustained. There is further little question, as the District Court found, that Ashworth is presently disabled by a knee injury sustained in the same accident, being the aforesaid ruptured medial meniscus.
As to the disability resulting from incomplete or potential right inguinal hernia, we believe the preponderance of the evidence in the record indicates this to be a disabling condition resulting from accident in the course of Ashworth’s employment with the defendant.
It is undisputed that on the initial examination of Ashworth by Dr. C. L. Saint, the company physician, Dr. Saint examined Ashworth for a hernia condition and found a “right inguinal hernia pouching.” [1]
As to whether this condition resulted from the industrial accident, Ashworth testified, TR-110:
“Q. I’ll ask you whether or not that area of your body (i. e., the hernia) was hurt in this fall? A. That’s right.
“Q. How was it hurt? What was the first you knew that you was hurt in the area that he examined you this morning? A. When I first knew it, well, it hurt through there. I had a hurting all the way through there. Right straight through. I did not know what the cause of it was.
“Q. When you went to Dr. Saint the first time, did he examine you for Hernia? A. He examined me for Hernia and he examined me in my lower back.” (Italics ours).
Aside from plaintiff, the only witnesses to testify in this cause were doctors, as follows : On behalf of defendant, Dr. T. E. Banks and Dr. C. V. Hatchette, orthopedic specialists, and Dr. C. L. Saint, general practitioner and company physician. Three general practitioners testified for plaintiff: Dr. W. E. Reid, Dr. O. B. Owens, and Dr. George W. Smith.
The first two orthopedic specialists did not testify concerning the hernia condition, nor apparently did they examine Ashworth with regard to same. Their lack of interest therein, of course, is explained by it being outside the field of their specialty.
*683 The testimony of Dr. C. L. Saint is as follows:
“Q. Now, isn’t that known by all doctors, that know anything about a hernia, as an incomplete hernia? Isn’t that an incomplete hernia ? A. I don’t quite understand that question — an incomplete hernia. It’s either a hernia or no hernia or potential hernia you might say.
“Q. Yeh, but I want more than that. Isn’t a potential hernia sometimes just has that enlarged ring. This man has more than just an enlarged ring there? A. Yes, he has a pouching.” (TR-138)
******
“Q. Is that man a safe risk for you to recommend to work? A. No.
“Q. You wouldn’t recommend him to work, would you? A. No.
“Q. Talk out so they can hear you. You wouldn’t recommend that kind of man to work, that’s got that condition?. A. No. (TR-139)
The substance of Dr. W. E. Reid’s testimony is contained in the following excerpts from his testimony:
“Q. That is more than what you’d call potential hernia? A. Well, it is a potential hernia but you find it bulging down well against your finger through the ring, the external ring.
“Q. Well, what kind of a hernia is that? A. It is a potential hernia; it is not through but it does bulge down against the finger. Therefore, he has an incomplete hernia.
“Q. Should that be operated on? A. Yes.” (TR-83)
******
“Q. Well, do you think that he ought to work until that hernia is corrected? A. I don’t think so because it’s going to come through if he does any strenuous work. (TR-85)
******
“Q. In which case of course you have to rely pretty well upon the veracity of the patient? A. Yes. The only thing that I am sure of is that he has either a ruptured external ring and has that potential or indirect hernia, whichever you want to call it. It is indirect all right down through the canal, but it is not entirely through. It bulges down to your finger, etc., and of course we know an operation is the only cure for it.” (TR-87)
Dr. O. W. Owens failed to find a right inguinal hernia disability, while Dr. George W. Smith thought that Ashworth was disabled by reason of same.
The medical testimony indicates that an accident such as was sustained by Ash-worth could produce his present condition, and as above outlined, we believe the preponderance of the medical testimony indicates that Ashworth is presently disabled because of a “potential” or an “incomplete” hernia. While defendant correctly urges that an unfavorable inference may be drawn from the failure of plaintiff to take the testimony of Dr. Beckcom, the personal physician who first treated Ashworth after the accident, we do not believe the unfavorable inference outweighs credible sworn testimony.
The serious question, of course, is whether this disability arose because of the industrial accident and is compensable.
The substance of defendant’s factual defense is contained in the following testimony of Dr. C. L. Saipt at TR-140:
“Q. Do you know even whether it was acquired on the job? A. No.
“Q. The fact that it was completely asymptomatic upon your questioning at all times following this injury, do you have any idea as to where it was acquired or could have been acquired? A. No.
“Q. Could it have been acquired in, hundreds of ways other than by reason of the history of this particular acci *684 dent, assuming that such an accident occurred? A. Certainly.
“Q. Would it he possible for me to say to get a hernia, merely on getting up and out of his chair or lifting his chair or going down ■ the stairs ? A. Yes.
“Q. If it was a true traumatic hernia caused by a severe blow in the abdomen, would it not have been symptomatic in your opinion? A. Immediately.
“Q. And upon your palpations, would it not have' been symptomatic rather than asymptomatic upon your examination? A. Yes.”
Taking into consideration the circumstances that Ashworth was initially suffering from back, knee, and hand injury, as Well as a kidney ailment, we do not believe his failure .to call the attention to the first examining physicians to pain in this area to be especially significant.' Ashworth’s prior record of public employment over an extended ■ period of time without a single prior industrial disability or any complaint whatsoever prior to this accident of pain in the area of the potential or incomplete hernia; his testimony that pain in this area commenced at the time of the accident and continued thereafter; in our opinion, adequately support the finding that his present undoubted disability in this respect stems from this industrial accident.
Further, we are not. overly impressed with the accuracy of the recollection and records of the company'physician, Dr. C. L. Saint, who testified, nor his objectivity, since, he gratuitously testified to the effect that Ashworth’s complaints did not originate in an industrial accident, (his notes allegedly stated that Ashworth “reported to his foreman 'that he couldn’t work because his back ached and his kidneys wouldn’t act”), when the uncontradicted testimony — undenied by defendant employer — is to the contrary; gratuitously included an unfavorable valuation of Ashworth’s credibility, and . reference to “The. first thing I noticed was definite alcoholic odor in his breath” on date of first examination; found significant a diseased tooth which absolutely no other physician testifying found worthy of comment; and in general overlooked as significant symptoms of the knee and back and finger which Dr. T. E. Banks, approximately three weeks later, found worthy of comment (e. g., Dr. Banks found “a definite area of swelling” at the knee, “slight splinting off the low back” and tenderness, a “definite ulnar deviation of the little finger”, which allegedly despite examination with reference to these specific complaints the company physician was unable to notice.) In fairness, however, we must note that this physician did discover a “right inguinal hernia pouching”, and admitted that he could insert his finger %ths of an inch into Ashworth’s abdomen.
Partly on the basis of this testimony, the able District Court held the hernia claim of plaintiff an afterthought. But the chief basis of his holding was that a condition denoted as a “potential hernia” is not compensable. While of course this is true with regard to nondisabling “potential” hernias which are only a congenital enlargements of the inguinal rings, in the present instance what is sometimes denoted as a “potential” hernia is actually a traumatic weakening in which there is a bulging, but not a rupture, of the tissues — what in some of the lawcases is denoted as an “incomplete” hernia.
Thus, defendant-appellee urges that the condition known as a “potential hernia” is never compensable, citing Cormier v. Hart-Mun Furnace Co., La.App. 1 Cir., 9 So.2d 814, Taylor v. Kirby Lumber Co., La.App. 1 Cir., 182 So. 169 and Deville v. Dennis, La.App. 1 Cir., 152 So. 154. The first two cases concern instances where the “potential” hernia specifically was found to be nontraumatic in origin and not disabling, being nothing more than a predisposition to sustain a hernia; and the last cited case concerns an instance where a congenital (“embryonic”) potential hernia had indeed resulted in a true hernia from some strain *685 or cough, but where the court specifically found that there was no proof that this strain or accident had occurred in the •course of employment with defendant employer so as to render the disability com-pensable.
In the present instance, whether the doctors denote Ashworth’s condition as a “potential” or an “incomplete” hernia, they agree it is disabling; and as above-stated, we find the preponderance of the evidence proves that this condition resulted from the accident in the course of his employment. The present injury and disability, therefore, is similar to those for which compensation was awarded in Long v. Louisiana Highway Commission, La.App., 2 So.2d 683; Parker v. Weber-King Mfg. Co., 1 Cir., 19 La.App. 177, 139 So. 660, and Plumlee v. Calcasieu Sulphate Paper Co., Inc., 1 Cir., 16 La.App. 670, 132 So. 811, where incomplete hernias resulting from industrial trauma were held to be compen-sable. “ ‘ “An attempt on his (the employee’s) part to do hard manual labor would cause pain and a possible complete hernia, there is no reason for him to undergo that pain and incur that danger” ’ ”, Long v. Louisiana Highway Commission, La.App., 2 So.2d 683, at page 686. As stated in Rivero v. Leaveau, La.App., 45 So.2d 418, at page 422, “the giving way of any portion of the laborer’s body while engaged in his work” constitutes a compensable accident.
In view of the foregoing finding, it is inappropriate for this court to issue any dicta concerning whether plaintiff should be required to submit to an operation to correct the medial meniscus condition — that is whether this court will follow Simmons v. Blair, 194 La. 672, 194 So. 585, or the later Second Circuit cases, Fredieu v. Mansfield Hardwood Lumber Co., La.App. 1951, 53 So.2d 170 and French v. Employers Mutual Liability Insurance Company of Wisconsin, La.App.1954, 70 So.2d 179. Since Ashworth. is disabled from other causes as well as the medial meniscus, the judgment will b,e and is hereby amended to strike out the requirement' that plaintiff submit to surgery, for the above and foregoing reasons, and is affirmed in all other respects insofar as awarding weekly compensation during disability, interests, costs, etc.
Amended and affirmed. ■

. This initial examination was on August 11, about 18 days after the accident; Ashworth had been undergoing treatment by a personal physician in the interim, having reported to Dr. Saint about four days after the accident, during which four days Ashworth had been home off work. Due to a misunderstanding or disagreement on originally reporting to Dr. Saint, he was told to come back the following day, but instead went to a private physician that same night.