85 So.2d 47

**Perry H. (Buster) COLEMAN, Jr.**

**v.**

**MANUFACTURERS CASUALTY INSURANCE COMPANY.**

No. 42131.

Jan. 16, 1956.

Camden K. Staples, Grove Stafford, Alexandria, for plaintiff-appellant.

Gravel, Humphries, Sheffield & Mansour, Leonard Fuhrer, Alexandria, for defendant-appellee.

McCALEB, Justice.

This is a suit to recover the $8,000 limit of liability on an insurance policy, plus penalties and attorney's fees, for a loss arising out of an alleged burglary, which occurred on the night of January 21, 1953 when persons unknown are asserted to have broken into the insured's warehouse and to have stolen therefrom 115½ cases of whiskey valued at $8,614.

Following a trial, at which considerable documentary and oral evidence was taken in respect to the verity of the burglary and loss, there was judgment in favor of defendant dismissing the suit. Plaintiff has appealed.

Plaintiff, who is engaged in the retail liquor business in the city of Alexandria, Louisiana, operates a saloon located on North Fourth Street and, in connection

therewith, has a warehouse in which he stores his stock of liquors and soft drinks. On October 20, 1952, defendant issued plaintiff its mercantile open stock policy covering this warehouse against burglary and, at that time, an inventory of the liquors on hand was taken by plaintiff which showed that he had stored in the warehouse 269 cases of whiskey valued at $17,055.26. On November 6, 1952, 30 cases of gin, valued at $1,220.10, were added to plaintiff's stock and, on January 13, 1953, nine cases of James E. Pepper whiskey, valued at $640.98, were stored. These items were recorded by plaintiff on the inventory dated October 20, 1952 and, together with the original 269 cases of whiskey, made a total of 308 cases of liquors which were stored in the warehouse prior to the alleged burglary.

Plaintiff claims that, on the night of February 21, 1953, thieves broke into the warehouse and made off with 115½ cases of the whiskey shown on the inventory of October 20, 1952, specifically being the major portion of a lot of Bourbon (I. W. Harper, Old Grand Dad and Old Taylor) and Scotch (Ambassador) purchased from John Freemore of New Orleans on July 11, 1952. According to plaintiff, the 115½ cases of whiskey represented the remainder of the original stock, excepting the nine cases of James E. Pepper whiskey not taken in the burglary, 181½ cases having been withdrawn by

him from the warehouse for use in his business between October 25 and December 26, 1952, which withdrawals were recorded on a stock withdrawal list kept by him in his safe.

The defendant insurer does not question that the above described whiskey had been purchased by plaintiff and was in storage in his warehouse on October 20, 1952 when the policy was issued but it denies all material allegations as to the nature and extent of the alleged loss.

In view of the pleadings, plaintiff had the burden of establishing by a preponderance of evidence the reality of the claimed burglary and the loss resulting therefrom. Since the demand was rejected by the district judge, it is evident that he thought that the evidence submitted by plaintiff as to the burglary and loss, or both, was not genuine. Indeed, the chief complaint of plaintiff's counsel on this appeal is that the judge erred in rejecting the evidence of plaintiff and his witnesses, which they claim stands uncontradicted, and they cite the familiar rule of law that such testimony is to be accepted as true.[1]

Defense counsel readily acknowledge the cited doctrine but they question its applicability in this case because plaintiff's evidence has been challenged and contradicted by other proof. In this conten-

1. Miller v. Hartford Live Stock Insurance Co. Inc., 165 La. 777, 116 So. 182; Bonanno v. Decedue, 186 La. 1041, 173 So. 756 and Cockrell v. Penrod Drilling Company, 214 La. 951, 39 So.2d 429.

tion, counsel are fully supported by the record.

Accordingly, since the case involves a simple issue of fact, it remains then to consider whether the trial judge erred in ruling that plaintiff has not established his case by a preponderance of evidence.

In substantiation of his claim, plaintiff offered invoices of whiskey shipments, receipts of payment, the inventory of October 20, 1952, another inventory allegedly made on December 31, 1952 and a ledger of withdrawals of whiskey from the warehouse between October 25 and December 26, 1952.

Plaintiff also called to the stand several witnesses who stated that there was, at various times prior to the alleged loss, a quantity of whiskey stored in the warehouse. All of this testimony was indefinite as to the amount in the warehouse as well as the time when it was observed. In view of this, the evidence is of no particular value other than as corroborative of plaintiff's statement that 115½ cases of whiskey were stolen.

Apart from his own statement, plaintiff's chief witness was his colored maid, Varie Johnson, who has been in his employ for ten years working both at his bar and at his home. She testified, among other things, as to a definite amount of whiskey in the storeroom prior to the alleged loss, stating and repeating, that there were 125 cases of whiskey in the warehouse yet she admitted that she cannot count past ten. After reading her testimony, we find it so contradictory and uncertain as to be wholly unreliable.

Hence, in final analysis, plaintiff's claim must stand or fall on his own testimony and the documentary evidence submitted to prove his loss. A scrutiny of his statement in the light of certain evidentiary facts and circumstances brought out by defendant leaves us with the definite impression that the loss claimed herein is in the realm of doubt. To begin with, although plaintiff and Varie Johnson testify in detail as to the physical evidence of the burglary, i. e., the broken glass in the front door of the warehouse; the hasp and lock torn off and the removal of the 115½ cases of whiskey which had been purchased from John Freemore, Detective Bolen of the Alexandria Police Force, who made an investigation of the alleged crime, gave evidence which casts doubt upon plaintiff's claim of loss. The officer stated that, whereas he found that a glass panel was broken near the night latch of the front door and that glass was found on the floor inside, it did not appear to have been walked over as it was not crushed or powdered. This circumstance tinges with some suspicion the reality of the theft as the probabilities are that the alleged burglars would have crushed some of the broken glass in the operations necessary in the removal of 115½ cases of whiskey. Detective Bolen also said that, although he observed two or three sets of footprints leading into and out of the warehouse through the glass front door, which footprints were plainly visible as the warehouse had not

been swept for quite some time, there did not appear to have been much traffic across the floor. Here, again, we believe that, if a large stock of whiskey had been removed, it is likely that there would have been more evidence of disturbance by the burglars.

But, above this, we think that the documentary evidence introduced by plaintiff renders his claim highly conjectural. Besides the October 20th inventory, plaintiff submitted another inventory, dated December 31, 1952, which shows that he had on hand at the end of the year 115½ cases of whiskey. This is the exact amount of whiskey allegedly taken in the burglary. Still, according to the inventory of October 20th, as supplemented by the 30 cases of gin less the withdrawals, there would have been 117½ cases on hand at the time of the burglary instead of the 115½ cases claimed to have been stolen.[2] A questioned documents expert testified that, in his opinion, one or more pages of the original inventory had been removed and also that one or more pages had been removed from the book containing the list of withdrawals of liquor from the warehouse. And it is also significant to note, with respect to the withdrawals, that the last one listed in the book is December 26, 1952, there being none during the week preceding New Year, a time when purchases of liquor would normally be high.

The record reveals other suspicious circumstances surrounding the loss which we find unnecessary to mention, except one. On January 21, 1953, just prior to the perpetration of the alleged burglary, Mr. Robert Hunter Pierson, an attorney of the Alexandria Bar who had been appointed to take an inventory of the community of acquets and gains in connection with a pending suit for a separation from bed and board brought against plaintiff by his wife, repaired with two appraisers to plaintiff's premises where he took an inventory of the assets of his liquor business. Pursuant with his duties, Mr. Pierson asked plaintiff to show him all the liquor on hand and plaintiff complied by exhibiting the stock he kept in the barroom but he did not give the notary and appraisers any information about the case goods stored in his warehouse. However, on the next day following the alleged burglary, plaintiff showed Mr. Pierson some records respecting the whiskey which had been taken from the warehouse. Mr. Pierson's testimony is corroborated by both appraisers and they state that plaintiff's safe, where he swears the inventories and withdrawal lists were kept, was fully examined and that no such lists were found therein at the time of the taking of the inventory.

Finding no error in the conclusion reached by the district court, the judgment is affirmed.

2. These figures do not take into consideration the nine cases of James E. Pepper whiskey placed in the warehouse on January 13, 1953 which were not stolen in the burglary.