88 So.2d 238 (1956)
Ira TURNER, Plaintiff-Appellant,
v.
SOUTHERN INDUSTRIES COMPANY et al., Defendants-Appellees.
No. 4215.
Court of Appeal of Louisiana, First Circuit.
May 25, 1956.
Rehearing Denied June 29, 1956.
Writ of Certiorari Denied September 28, 1956.
Godfrey & Edwards, Many, for appellant.
*239 Gist, Murchison & Gist, Alexandria, for appellees.
TATE, Judge.
Plaintiff Turner appeals from dismissal of his workmen's compensation suit against Southern Industries Company, a partnership. The District Court found no accident had been proved.
Plaintiff alleges disability by reason of hernia sustained while working for defendant. There is little doubt that at date of trial and from at least a few days after Turner's alleged accident, he was disabled by reason of hernia. The question is whether this hernia originated from industrial accident within the meaning of the Louisiana workmen's compensation act, LSA-R.S. 23:1021 et seq.
Turner testified that at about 4:00 A.M. on December 8, 1954, he twisted while stacking 90-lb. bundles of paper in the course of his employment; he felt a burning in his lower abdomen and a nausea. He sat down for a short time, then (in his words) "I got up and drug in the rest of the time until 6:30 the best I could," Tr-121.
At this end of this shift at 6:30 A.M., Turner drove directly home, informed his wife of the accident, took an aspirin, and went to bed. The pain becoming worse, he stayed in bed throughout that day and the following night, sending word that he could not report to work when his shift began at 10:00 P.M. that evening. He stated that he did not report to the office of Dr. C. L. Saint, company physician, on the afternoon of the 8th, a Wednesday, because the office was closed on Wednesday afternoons. His wife's testimony corroborated his as to his complaint of the accident and his at first slight pain on his arrival home, with increasing pain thereafter.
Turner reported to the company doctor the following morning, December 9th. Of this examination and visit, Dr. Saint testified: "The patient walked in in a somewhat doubled-up attitude, somewhat fixed manner, alleged that this pain began at 4:00 A.M. December 8 while unloading paper from a dolly to a stack. Now, on specific questioning, he gave no history of a strain or lifting an unusually heavy bunch."
As to this testimony of Dr. Saint, the District Court commented that it was favorable to Turner in that it fixed the time of the accident as testified by plaintiff (who consistently gave the same history to other examining physicians), but that "it is unfavorable to the plaintiff in that plaintiff on specific questioning gave no history of a strain." (Tr-217.)
We believe therein the very able District Court fell into error. An aggravation of a latent weakness is a compensable accident, or "the giving way of any portion of the laborer's body while engaged in his work." Rivero v. Leaveau, La.App., 45 So.2d 418, at page 422. The jurisprudence is "well settled" that "an injury is compensable where excessive heat, heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition" (many citations), Hemphill v. Tremont Lumber Company, 209 La. 885, 25 So.2d 625, at page 627.
Except for Dr. Saint, all medical witnesses who examined Turner after the accident (some within a few days thereafter) found plaintiff disabled by reason of hernia. The four physicians who testified on behalf of plaintiff found bi-lateral (that is, on both sides) indirect inguinal herniae, while the other specialist who testified for defendant found such hernia only on the right side. These five physicians uniformly agreed that Turner is unable to perform the duties similar to those of his former employment, and there is little question that by reason of the aforesaid hernia(e) Turner is totally disabled within the meaning of the compensation act.
Although Dr. Saint testified that on the original examinations of December 9th and 15th, 1954, and again on examination during the trial, he diagnosed no hernia(e), he admitted that on the examination at the *240 trial he found what he denoted as a "potential hernia sac", stating that "a hernia is not a hernia until it comes out and manifests itself as a hernia," Tr-78. This seems to be the definition of a direct or a complete hernia, but as noted by the testimony of all the other physicians and held by the jurisprudence, the traumatically caused indirect or incomplete hernia is also disabling and compensable if incurred in the course of employment, Ashworth v. Calcasieu Paper Co., Inc., La.App. 1 Cir., 85 So.2d 681, certiorari denied May 6, 1956; Long v. Louisiana Highway Commission, La.App., 2 So.2d 683; Parker v. Weber-King Mfg. Co., 1 Cir., 19 La.App. 177, 139 So. 660; Plumlee v. Calcasieu Sulphate Paper Co., 1 Cir., 16 La.App. 670, 132 So. 811.
Dr. Saint admitted that he was able to insert his index finger into plaintiff's inguinal canal and to feel the cough impulse transmitted, which is indicia of the hernia, whether direct or indirect, see testimony of Dr. Murdock, Tr-71, testimony of Dr. Reid, Tr-99.
Dr. Saint testified that he had examined Turner seven months before the accident, when Turner had applied for work with defendant. He stated Turner's condition was the same at the trial as when he reported for work. The following questions and italicized medical notations by Dr. Saint are abstracted from his report of initial examination (Tr-80):
"7. Any trace of hernia? No. * * *
"9. Any other noticeable physical impairment? Left tonsil has insisted fib (fine) lesion  Markedly enlarged and moderatedly relaxed inguinal rings."

Dr. Saint approved Turner for employment with the comment: "Other than enlarged inguinal rings applicant is o. k. for work."
Turner, 38 years of age, had worked his entire life at hard labor without previous complaint, and was passed by defendant's doctor for employment at hard labor. In view of the unanimous testimony of all five other doctors who examined Turner as of date of trial that because of his indirect hernia, Turner was not a safe employment risk for hard labor, it is most difficult to conclude that Dr. Saint would have failed to note on the original examination reports the "potential hernia sac" he noted at the trial, if such had actually existed at date of original employment, in view of the notation of other minutiae and since this was the very purpose of this physical examination.
We must therefore conclude that this company physician was mistaken when he gave his opinion that Turner's condition was the same at trial as at date of original employment; and we note the District Court made no factual finding contrary to this conclusion.
As defendant urges, an unfavorable inference arises from plaintiff's failure to call one doctor who examined plaintiff at plaintiff's request; but this unfavorable inference is not sufficient to outweigh the positive sworn testimony of all other examining physicians (save the aforesaid Dr. Saint) that indeed plaintiff has a hernia.
In holding that Turner's testimony did not bear the burden of proving the accident, the District Court stressed that although he testified he "drug in" the rest of his time with difficulty, he admitted not discussing the accident with his two co-employees or reporting it to his foreman, although he knew the company regulations required such report; and that the co-employees did not notice Turner sitting down following the injury.
Turner explained that working conditions were not conducive to conversation since "with the knocking of the paper and the racket of the machine why you couldn't holler and hear a man back there", Tr-138, and "I didn't feel sick enough to go to the doctor. I didn't think it was anything serious at the time"; "It started hurting me bad on Wednesday evening" "and I couldn't go that evening because Dr. Saint was closed", Tr-142.
Dr. Saint's testimony included the following:

*241 "Q. Now, when a hernia comes on suddenly as the result of a strain, if it's aggravated or if it's caused traumatically, if there is such a thing, what are the usual symptoms of the patient? A. They usually notice a burning pain of varying severity at the point of herniation.
"Q. From your experience, is this pain such as would allow a man to continue with his work? A. Depending on the severity of the pain  how severe the pain is. Most of them that I've seen continue their work because the pain was not severe enough to stop them. (Tr-179.)
* * * * * *
"Q. And I believe you told Mr. Turner on that sixth day to go by the office and see about his compensation, didn't you? A. I told him to report to the foreman, that's all I know.
"Q. You don't recall whether you said anything about compensation or not? A. He didn't report to the foreman  a lot of these men have injuries and come to me and then report to the foreman. It's important in getting the record straight in their cases." (Tr-190.)
As this testimony of Dr. Saint emphasizes, no particularly unfavorable inference should be drawn from plaintiff's failure to know that the hernia initially sustained was a serious injury, nor to report it either to his foreman or to his co-employees. Equivalent circumstances surrounded the accident in several cases for which an employee was allowed compensation when disabled by hernia, see e. g., Bailey v. Long-Bell Lumber Co., La.App. 1 Cir., 63 So.2d 452; Howell v. demons Bros. Lumber Co., La. App. 1 Cir., 32 So.2d 60; Hill v. J. B. Beaird Corporation, La.App., 19 So.2d 295 (employee continued working after he felt burn; did not know he had sustained hernia until three days later, after medical examination); see, also, McGlothlin v. Ford, La. App., 6 So.2d 754.
The District Court further drew an unfavorable inference from this illiterate workingman's answer of "I don't know" to several questions, the answers to which the District Court felt should have been known by him. We do not find his failure so material or incredible, as to cast doubt upon his veracity, to know the answers to such questions as: the name of another member of his crew; the name of the doctor to whom he had been sent by his attorneys, or this doctor's diagnosis; whether or not he had complained to a doctor who had examined him several years ago (concerning an auto-train wreck injury) of pain in his testicle (there is no indication whatsoever in the record, other than counsel's question, that he had ever so complained); whether or not he had informed his new employer, the defendant, at the time of his application for employment of this auto-train wreck injury.
We may add that even if, as defendant's employees state, Turner did not inform them of this auto-train wreck injury when he applied for employment and incorrectly told them he had suffered "no accidents"  even assuming he knew the question referred to tort claims, as well as industrial accidents  we fail to see how, as defendants urge, any unfavorable inference can be drawn that he would not tell the truth under oath. Perhaps the unsworn misstatement of this father of four small children, in an effort to obtain employment, would not be commendable; but, similarly, "puffing" of commercial enterprises or promises of political candidates, although sometimes untrue, do not relevantly indicate whether or not the individual concerned would give false testimony under solemn oath before a court.
The positive sworn testimony of plaintiff and his wife of his pain commencing on the job and increasing thereafter at home up until and past his examination by the physicians, corroborated by the testimony of all physicians testifying that such accident and symptoms as described were compatible with and if true the cause of *242 plaintiff's present disability, is not in our opinion materially disputed by plaintiff's failure to report or discuss the accident with his foreman or co-employees in the initial and less painful stages of the injury. "Courts will not impute perjury to apparently credible witnesses, Miller v. Hartford Live Stock Ins. Co., 165 La. 777, 116 So. 182; Fogleman v. Interurban Transportation Co., 192 La. 115, 187 So. 73, particularly in the absence of any evidence in the record to indicate that the evidence was false or unreliable. Bonanno v. Decedue, 186 La. 1041, 173 So. 756." Cockrell v. Penrod Drilling Co., 214 La. 951, 39 So.2d 429, at pages 432-433. "Uncontradicted testimony should be accepted as true" (syllabus), Coleman v. Manufacturers Casualty Insurance Company, 229 La. 105, 85 So.2d 47, at page 48, citing this "familiar rule of law" as supported by the above cases.
In our opinion, the proof does not admit of serious doubt that Turner entered the employ of defendant (after a lifetime of hard work) free from disabling hernia seven months before the accident, was able to perform his duties up until the time of the accident without pain and satisfactorily, but that he has been continuously disabled since he appeared at Dr. Saint's office on the day following the accident.
We believe the able District Court erred in concluding that no accident occurred within the meaning of our compensation act, as above stated; and that if the effect of the decision is to place the burden upon the employee of proving that in the 24-hour interval between his leaving work and reporting to Dr. Saint, no strain or aggravation had occurred which produced the disabling symptoms, instead of the industrial accident, then that as a matter of law such burden does not lie upon him, in view of his positive sworn testimony (corroborated by medical witnesses that such would be the history), of the burning pain and nausea on the job, uncontradicted by any testimony nor made suspect by any suspicious circumstances.
The uncontradicted testimony is that plaintiff's disability is permanent, but that it may be cured by operation. Immediately prior to trial, defendant filed an amended and supplemental answer requesting that Turner be denied compensation in the event of his failure to submit to hernia operation. This allegedly was on the basis of Leday v. Lake Charles Pipe & Supply Co., La.App. 1 Cir., 185 So. 655, which however concerned only amputation of a finger tip, a very minor operation with almost no danger or pain and suffering and with almost a certainty of success. Pretermitting whether there has been sufficient procedural tender of this serious operation made by supplemental answer, and we doubt that there was, see Benefield v. Zach Brooks Drilling Co., La.App., 59 So.2d 710; it has been and is well settled that an injured employee is not required to undergo a surgical operation for hernia on penalty of compensation being denied to him, see Johnson v. U. S. Fidelity & Guaranty Co., La.App., 58 So.2d 261, containing comprehensive survey of the jurisprudence concerning same.
The physicians testifying herein stated that repair of a hernia is a major operation; the mortality rate is .1%, or one in a thousand (and some estimates were higher); the hernias recur in at least 5%-10% of the cases after the operation. An injured employee is not required to undergo such risk with such chance of recurrence, on penalty otherwise of starvation for himself and his family.
For the above and foregoing reasons, the judgment of the District Court herein is reversed; judgment is rendered in favor of plaintiff, Ira Turner, and against defendants, Southern Industries Company, a partnership composed of M. R. McGehee, C. C. McGehee, Roy Sutton McGehee, and Belia Crawford McGehee, holding said partnership and said partners individually and in solido liable in the full sum of $30 per week during plaintiff's disability, commencing December 8, 1954, not to exceed 400 weeks in all, with legal interest on each weekly compensation installment from the date when due until paid, and reserving plaintiff the right to recover medical expenses incurred as a result of this accident, within *243 the statutory limits. The fees of the medical experts testifying are fixed, per stipulation approved by the trial court, at $35 each, except for that of Dr. Saint which per another court-approved stipulation is fixed at $50. All costs of these proceedings to be paid by defendants-appellees.
Reversed and rendered.