TATE, Judge
(dissenting from refusal to grant rehearing).
Under the practice of this court, applications for rehearings are decided by the •entire court, rather than only by the panel which heard the appeal. Although the writer was not a member of the panel which •originally decided this case, I have read and studied the entire record in connection with the pla-intiff-appellee’s application for rehearing; and I must respectfully dissent from the majority’s refusal to grant a re-Tiearing herein. With due respect to my learned and conscientious brethren of the majority, if the original decision of this case is indeed correct, then the other courts ■of appeal have for several decades been incorrectly affirming awards of compensation to claimants disabled by back injuries.
The trial court found the plaintiff to be ■totally disabled. In my opinion, the preponderant medical evidence, and all the lay testimony (which the majority opinion did mot see fit to mention) proves this disability.
The plaintiff is a 36-year-old workingman who has been engaged in hard manual labor since he was 15 years of age, despite a childhood hip injury which produced a permanent shortening of his right leg and a severe limp, which all physicians herein admitted contributed to the extended duration of his disability. The plaintiff had had no difficulty in providing a living for his wife and two children, except for an unrelated disability in 1957. At the time of the present accident in April 1959, he was performing his heavy manual duties without difficulty.
The fact that the plaintiff received a severe wrenching injury to his back in April is not denied. Two physicians who saw him during that time found him to be disabled, and the defendant insurer without complaint paid him compensation for total disability through 45 weeks. The question is whether the plaintiff has a residual disability by reason of back pain.
Two doctors definitely concluded, substantiated in part by obj ective findings, that the plaintiff was disabled because of continued back pain.
Dr. Charles Cook, his family physician for approximately five years before the accident, who was also the attending physician for the present disability, treated the plaintiff professionally approximately twenty times between April and December of 1959, and thereafter saw him irregularly until making another formal examination of the plaintiff on May 10, 1960, eight days before the present trial. This doctor was positive that the claimant is now disabled from performing heavy labor by reason of his back condition, whereas the plaintiff had not been so disabled prior to the present accident. As objective corroboration of the plaintiff’s complaints of pain, this doctor visually noted the atrophy of the patient’s lumbar muscles in May of 1960 as compared with the condition immediately following the accident in April of 1959. See Tr. 140-141.
*858 In addition, Dr. Henz Faludi, a neurosurgeon, examined the claimant on May 22, 1960 and made certain partly objective findings (including “slight muscular spasms in the left lumbar reflex”, Tr. 246) indicative of a small disc herniation (Tr. 254— 256), as the result of which this specialist reached the definite conclusion that the plaintiff “still was considerably disabled” (Tr. 248) because of low back pain.
Against this impressive medical evidence, the defendant produced the testimony of two doctors. Dr. R. E. King, orthopedist, saw the claimant once (and then five days before the trial), and whose testimony could best be summarized as stating that he found no “definite objective symptoms of disability” Tr. 275).[1] Dr. P. M. Davis, orthopedist, had found the plaintiff disabled by reason of a lumbosacral sprain on his examinations of May 2 and June 30, 1959; however, on his last examination of February 12, 1960, it was his opinion that the plaintiff had recovered from his injury.
It is noteworthy, however, that Dr. Davis admitted that he found an additional atrophy in the right thigh on the occasion of his last examination as compared with his earlier examinations (see Tr. 220-221), and that he also admitted that on the occasion of one of his examinations he found a diminished ankle reflex which is sometimes indicative of a ruptured disc (Tr. 233). Both Dr. Davis and Dr. King admitted that patients with disc injuries often suffered pain only intermittently and had periods of remission produced by rest, which could however be immediately aggravated into painfulness by activity. See Tr. 225-226, 280-281.
In addition to the medical testimony, the testimony of the claimant, his wife, an employer, three neighbors and relatives, and his pastor, all testified from their personal knowledge that, whereas the plaintiff had been a good worker before the accident, the claimant now gave every indication of being disabled, sometimes being required to stay in bed, walking and moving differently than before, and otherwise behaving corroborative of his own complaints of pain. This evidence, incidentally, shows that, despite his disability, the claimant tried on at least three occasions to earn a living for his wife and children, but was unable to do so because of a recurrence of the back pains.[2]
What to me is grievous error in the majority opinion is the almost impossible burden it places upon compensation claimants to prove their claim of total disability by reason of a back injury, such as a herniated disc. By the veiy nature of the injury, as even the physicians testifying for the defendant herein agreed, the symptoms become latent and there is a remission of pain following rest, although the disability is immediately reactivated by exertion. Phy *859 sicians who examine the patient in the later stages of the disability naturally ofttimes do not find objective symptoms of the undoubted disability. In small disc injuries such as the present, ultimately the proof of the pain is merely corroborated by small and fleeting objective symptoms, but the finding of disability essentially depends upon the truthfulness of the claimant, as viewed in the context of the medical opinions and his entire working history.
Our trial brother correctly made this evaluation and found the claimant to be disabled. I will not mention the formerly respected doctrine that the factual findings of the trial court should not be reversed on appeal in the absence of manifest error, a •well-settled rule of our jurisprudence which the majority without reference discards as an unnecessary check upon the omniscience of appellate judges reviewing a cold record. I will simply state that there are several well-settled principles of evaluating testimony in compensation suits which the majority opinion incorrectly ignored or failed to apply when it reversed the trial court’s finding that the claimant was disabled, such as:
The testimony of attending physicians who see and treat a claimant many times should not be disregarded, and should be given far greater weight than the testimony of a medical expert who sees the claimant only once or twice and then primarily for purposes of litigation. Where the medical evidence is conflicting, the courts should resort to lay testimony in an effort to resolve the conflict. (Herein, the majority did not even refer to the uncontradicted testimony of six lay witnesses.) Positive testimony of examining physicians who find objective evidence of disability is of more weight than negative testimony of other physicians who on isolated occasions found no symptoms of disability; and the testimony of physicians examining the claimant on different dates should be reconciled where possible, and examinations with negative findings should be evaluated — where other examinations produce positive findings — in their proper perspective when the medical evidence indicates that the disability is of -an intermittent nature with periods of remission, of symptoms. Perjury is not imputed to apparently credible witnesses, and a claimant is stigmatized as a malingerer only upon clear and convincing proof. (Here, all the physicians admitted that the claimant was cooperative and apparently truthful.)
Among the decisions which applied these principles and reversed lower courts, which had failed to apply them and had therefore improperly dismissed claims for compensation by reason of back disability are: Stringer v. Brown Paper Mill Co., 224 La. 964, 71 So.2d 343; Istre v. Molbert Brothers Poultry and Egg Co., La.App. 3 Cir., 125 So.2d 436, certiorari denied; Shaw v. F. & C. Engineering Co., La.App. 1 Cir., 120 So.2d 523, certiorari denied; Mitchell v. Morgan Roofing Co., La.App. 1 Cir., 118 So.2d 492, certiorari denied; White v. Calcasieu Paper Co., La.App. 1 Cir., 96 So.2d 621, certiorari denied; Fee v. Calcasieu Paper Co., La.App. 1 Cir., 89 So.2d 434; Hebert v. Hartford Acc. & Indemn. Co., La.App. 1 Cir., 88 So.2d 243. See also, e. g.: Cockrell v. Penrod Drilling Co., 214 La. 951, 39 So.2d 429; Miller v. United States Fidelity & G. Co., La.App. 2 Cir., 99 So.2d 511, 512, certiorari denied; Turner v. Southern Industries Co., La.App. 1 Cir., 88 So.2d 238, certiorari denied.
Under these cases, the trial court in the present case may well have been reversed by the reviewing courts in question had it failed to award the claimant compensation for total disability, in view of the preponderating medical evidence and uncontradicted lay testimony, and the complete absence of any indication that the plaintiff was malingering or a perjurer. For it is to be remembered that the only times any doctors did not find objective symptoms of disability were on Dr. Davis’ examination of February 12, 1960 — this doctor nevertheless finding an atrophy on such occasion, and also having found the claimant to be disabled on two prior examinations — and on Dr. King’s examination of May 13, 1960. At every other medical examination, in- *860 eluding Dr. Cook’s latest on May 10th — and this doctor had also seen the claimant frequently over an extended period of time— and Dr. Faludi’s on March 22nd, the examining physicians found the claimant to be disabled.
Feeling strongly that error therefore has been committed and that grave injustice will result, I must therefore respectfully dissent from the rehearing’s denial by my esteemed, conscientious, and learned brethren of the majority.

. See his testimony at Tr. 275-276:
“A. I concluded that the patient was not presenting positive findings of an injury to an intervertebral disc in the lumbar region of the spine. He had increased strain on the lumbo-sacral due to the shortening of the right leg, and I felt that back pain could very well be due to that particular thing and that he would be benefited by wearing a lift on his right shoe to balance his pelvis and to equalize his leg lengths. I found motion in his low back to be full, no palpable muscle spasm and no sensory or reflex changes in his legs, and I felt his symptoms were largely subjective in nature and felt that he could do the work he did prior to his injury as far as Ms orthopedic examination, was concerned and I was not able to find any definite objective evidence of disability due to residuals from a low back injury.” (Italics mine.)

. The claimant told the examining physicians that he had attempted unsuccessfully to work, and he also frankly stated that he did not wear the corset regularly because it was so painful, and I am just unable to agree that the scratches on the plaintiff’s leg — sustained while hunting or attempting to work in the woods— or his failure to wear the corset are sinister indications that the claimant was a malingerer or a perjurer, or that the substantial positive testimony of two physicians that the plaintiff was disabled should be disregarded because of them.