169 So.2d 731 (1964)
Celestine HUDSON, Plaintiff and Appellant,
v.
Joseph B. ARCENEAUX et al., Defendants and Appellees.
No. 1289.
Court of Appeal of Louisiana, Third Circuit.
December 1, 1964.
Rehearing Denied December 22, 1964.
Writ Refused February 5, 1965.
*732 Simon & Trice, by John Rixie Mouton, Lafayette, for plaintiff-appellant.
Davidson, Meaux, Onebane & Donohoe, by Timothy J. McNamara, Lafayette, for defendants-appellees.
Before FRUGÉ, SAVOY and HOOD, JJ.
HOOD, Judge.
The plaintiff in this suit, Celestine Hudson, claims damages for personal injuries sustained by her when a taxicab in which she was riding as a passenger became involved in a collision with an automobile being driven by Dwynell Hale. The taxicab was being driven by Joseph B. Arceneaux. The suit was instituted against Hale, Arceneaux and Southern General Insurance Company, the last named defendant being the liability insurer of the operator of the taxicab.
Hale did not file an answer, and in due course a default judgment was rendered against him. He has not appealed from that judgment. Answers were filed by the remaining defendants, Arceneaux and Southern General Insurance Company, and after trial on the merits judgment was rendered in favor of those defendants dismissing plaintiff's suit as to them. Plaintiff has appealed from that portion of the judgment which dismisses her suit as to Arceneaux and Southern General Insurance Company.
The evidence shows that at about 7 p. m. on January 1, 1962, plaintiff and a friend, Gladys George, engaged a taxicab which was being driven by Arceneaux to transport them from a local tavern in Lafayette, Louisiana, to their respective homes in that city. In compliance with the instructions which Arceneaux received from these passengers, he took Gladys George home first. After letting her out of the cab he received a radio call to pick up a number of other passengers in Lafayette for the purpose of transporting them to Breaux Bridge, a neighboring town. He thereupon proceeded to the place where these passengers were waiting, picked them up and proceeded to take them to Breaux Bridge, with plaintiff still in the cab. After arriving in Breaux Bridge, and while Arceneaux was stopped for a traffic light at a street intersection there, an automobile being driven by defendant Hale collided violently with the rear end of the taxi. Plaintiff and all of the other passengers which Arceneaux had picked up were still in the cab when this accident occurred, and as a result of that accident plaintiff sustained the injuries which form the basis for this suit.
Plaintiff does not allege or contend that Arceneaux was negligent insofar as the collision itself is concerned, and we think the evidence shows that the collision occurred through no fault of Arceneaux. Plaintiff contends, however, that Arceneaux was at fault in failing or refusing to discharge her at her home in Lafayette before proceeding to Breaux Bridge. It is argued that Arceneaux's substantial deviation from the route to plaintiff's home, in violation of his implied contract to carry her to her destination within a reasonable time, was the cause of her being in the taxicab at the time of the accident, and thus it was the cause of her injuries. Plaintiff also contends that in view of the extraordinary degree of care owed to a paying passenger by a carrier it was the duty of the taxicab driver to foresee that on New Year's Day the reckless operation of motor vehicles would be unusually high, and thus he was at fault in exposing plaintiff to additional and unnecessary danger in taking her to Breaux Bridge.
*733 The trial judge, in rejecting plaintiff's demands against Arceneaux and his insurer, concluded that plaintiff had not asked Arceneaux to let her out of the taxicab before leaving Lafayette, but instead that she had voluntarily ridden with him and the other passengers to Breaux Bridge, and thus that the driver of the taxi had not failed or refused to carry her to her destination in compliance with her instructions. Plaintiff contends that the trial judge erred in arriving at these factual conclusions.
Plaintiff concedes that when she and Gladys George first engaged the taxi they instructed the driver to take Gladys George home first. She testified that after he discharged that passenger, plaintiff asked him four different times to let her out of the cab. According to her testimony, one of these requests was made while the cab was en route to pick up the additional passengers, and the other requests were made after these passengers had been picked up and were in the cab with plaintiff and the driver. Plaintiff states that after the other passengers were in the cab, she not only demanded several times that she be let out of the vehicle, but that she was angry with Arceneaux, that she fussed at him and that she was talking in a loud voice so that everyone in the cab heard her.
There were nine people, including plaintiff and the driver, in the taxicab at the time plaintiff allegedly made these demands. Plaintiff was sitting on the front seat next to the driver. At least one other passenger was seated on the front seat next to plaintiff, and the remaining passengers were seated in the back seat of the cab. Four of the occupants of the cab, besides plaintiff and Arceneaux, testified at the trial. Three of them stated that they did not hear plaintiff ask at any time that she be discharged from the cab, that she did not fuss at Arceneaux, that no argument took place between plaintiff and the driver and there was no loud talking. The remaining passenger who was called as a witness, Whitney Richard, testified that he heard plaintiff ask Arceneaux (whose nickname was "Popcorn") on two occasions to let her out of the cab, that plaintiff was "fussing at him for not putting her down" and that Arceneaux did not answer her except perhaps on one occasion by saying, "You coming." The evidence shows that Whitney Richard was seated on the back seat of the cab, that another passenger was sitting on his lap, and that there was a considerable amount of talking and laughing among the passengers. Richard's position in the cab indicates that he was in a less favorable position to hear a conversation between the plaintiff and the driver than were the other passengers who testified.
Arceneaux testified that plaintiff did not at any time tell him that she wanted to go to her home, that she did not ask him to let her out of the cab, that he passed directly in front of plaintiff's home three times while plaintiff was in the cab, and that he would have let her out at any time if she had requested that he do so. He stated that she kept "mumbling" in his ears, but that she did not ask him to let her out, that he would have heard her if she had made such a request, and that he knew that she did not intend to go home at that time.
The evidence shows that shortly after plaintiff got into the taxi, and while Arceneaux was taking Gladys George to her home, he traversed the street which runs directly in front of plaintiff's home. After discharging Gladys George, Arceneaux drove in front of plaintiff's home a second time in order to pick up the passengers who desired to go to Breaux Bridge. And, after picking up these passengers, the taxi passed plaintiff's home a third time on his way to Breaux Bridge.
The evidence also shows that plaintiff had ridden in Arceneaux's cab on many prior occasions, and that during one period of time Arceneaux transported her every day to and from work, and that he was paid by the week for that service. Plaintiff states that prior to the date on which this accident occurred Arceneaux had always taken her exactly where she *734 wanted to go and had let her out of the cab when she had asked him to do so.
The trial judge rejected the testimony of plaintiff and of Whitney Richard, and he accepted that of Arceneaux and the other passengers as to the issue of whether plaintiff asked or instructed Arceneaux to let her out of the cab. In his written reasons for judgment, the trial judge said:
"Plaintiff admits that she was mad and that she was talking loud and that she fussed at `Popcorn' intermittently. The only corroborating witness which she has is one Whitney Richard who was with the group of other people in the cab wanting to be brought to Breaux Bridge. Plaintiff was sitting in the front seat; Whitney Richard was sitting in the back seat and besides, another female by the name of Genevieve Sillon was sitting on Whitney's lap. Whitney said he heard the numerous protests of Celestine. Genevieve Sillon and all of the other occupants denied hearing any such protests. The court knows Whitney Richard, personally and by reputation, and does not have great regard for his veracity; besides, Whitney Richard had an independent suit against the same defendants for injuries of his own, and obviously had a personal interest in the outcome of this case. Whitney was too anxious to corroborate the plaintiff's story, his enthusiasm and exaggeration was glaring. All of the other occupants of the vehicle, the Court believes, were telling the truth. The Court also believes that they probably would have wanted to help the plaintiff, but would not perjure themselves to do so."
Plaintiff contends that the trial judge erred in imputing perjury to Whitney Richard, in failing to disclose to plaintiff prior to trial the judge's private knowledge concerning that witness, in failing to testify as a witness as to the alleged reputation of Richard, and in giving greater weight to the negative testimony of other witnesses than he gave to the positive testimony of Richard.
The trial judge's findings of fact, particularly those involving the credibility of witnesses testifying before him, are entitled to great weight on appeal, and his conclusions as to the facts will not be disturbed unless found to be clearly erroneous. Among the many cases in which this rule is recognized are: Orlando v. Polito, 228 La. 846, 84 So.2d 433; Barnes v. LeBlanc, 207 La. 989, 22 So.2d 404; Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437, and Martin v. LeBlanc, La.App. 3 Cir., 157 So.2d 283. The appellate courts of this state have held repeatedly that since the trial judge has the opportunity of observing the demeanor or deportment of the witnesses while they are giving their testimony, he is in a better position to judge the credibility of the witnesses than are the reviewing courts. See Barlotta v. Walker, 223 La. 157, 65 So.2d 122, and Jackson v. Bituminous Casualty Corp., La.App. 4 Cir., 153 So.2d 585.
In the instant suit the trial judge rejected the testimony of Whitney Richard for a number of reasons, one of them being that the court knew Whitney Richard personally and by reputation. The other reasons which he assigned were Richard's obvious personal interest in the outcome of the case and his demeanor on the witness stand. With reference to the witness's demeanor while testifying, the trial judge noted that he was too anxious to corroborate plaintiff's story and that "his enthusiasm and exaggeration was glaring." Any of these reasons would be sufficient, we think, to justify the rejection of Richard's testimony by the court.
Plaintiff apparently feels, however, that in evaluating Richard's testimony the trial judge relied too heavily upon his personal knowledge of this witness and his reputation, and he contends that the court erred in considering facts which were within *735 the knowledge of the court but were not in the record. He correctly points out that a judge is not authorized to make his individual knowledge of a fact, not generally known, the basis of his decision in a case pending before him. See Miranne v. State Farm Mutual Automobile Insurance Co., La.App. Orleans, 54 So.2d 538.
We feel that where a trial judge is personally acquainted with a witness and knows something about his background and reputation, that knowledge may have a considerable effect on the way the judge evaluates the testimony of that witness, but it does not form the basis for the decision in that case. It frequently occurs that a trial judge is personally acquainted with witnesses who testify in cases over which he presides. In determining whether to believe or disbelieve the testimony of any such witness we think it would be impossible for the judge to disregard or ignore all that he may know about the background, the personality, the standing in the community or the reputation of that witness. And, we think it would be highly impractical and untenable for us to hold that a trial judge, in observing the demeanor of a witness while testifying, in evaluating his testimony or in determining the credibility of the witness, must ignore or disregard his own personal knowledge of the witness or his reputation.
We hold, therefore, that in determining the credibility of a witness and in deciding what weight should be attached to his testimony the trial judge may properly take into consideration his own personal knowledge of the witness and of his reputation. The trial judge is under no duty to inform the parties, either prior to or during the trial, of the fact that he is acquainted with the witness or that he has some knowledge of the background or personality of the witness or of his standing or reputation in the community. It also is not necessary for the trial judge to testify to, or to place in the record, any facts of which he may have personal knowledge relating to the reputation of the witness or which may have some bearing on the conclusions reached by the judge as to the credibility of that witness.
In this case we attach great weight to the factual conclusions reached by the trial judge because he was able to observe the demeanor of the witnesses on the witness stand. We attach added weight to the conclusions which he reached as to the credibility of Whitney Richard, because of the fact that the judge was personally acquainted with that witness and his reputation.
We find no merit to plaintiff's argument that the trial judge gave greater weight to negative testimony than to the positive statements of Whitney Richard. Most of the statements of the other witnesses were not negative in nature, and as we have already pointed out Richard's testimony has been rejected.
We think the evidence supports the conclusions reached by the trial judge that plaintiff did not ask Arceneaux to let her out of the taxi before the accident occurred, but, on the contrary, that she voluntarily rode with him and the other passengers to Breaux Bridge where the accident occurred. Arceneaux was not negligent or at fault, therefore, in failing to deliver plaintiff to her destination within a reasonable time.
In view of these conclusions it is unnecessary for us to consider the question of whether Arceneaux's failure to discharge plaintiff from the cab before the accident occurred was a proximate cause of the injuries which were sustained by plaintiff.
For the reasons herein assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.