200 So.2d 1

**Norma Arlene OLDS**

v.

**William G. ASHLEY et al.**

No. 48471.

June 5, 1967.

Rehearing Denied June 30, 1967.

Dan A. Spencer, Shreveport, for plaintiff-relator.

Mayer & Smith, Alex F. Smith, Jr., Shreveport, for defendant-respondent.

McCALEB, Justice.

Plaintiff seeks recovery of damages for personal injures she received in an automo-

bile collision on August 18, 1964 when her Buick automobile was struck from the rear by an automobile owned and driven by defendant, Ashley. Joined with the latter originally, was Ashley's insurer, Marquette Casualty Company. However, on motion of the State Insurance Commissioner, proceedings against Marquette, which was shown to be an insurance company in rehabilitation, were stayed. Upon this development, plaintiff filed an amended petition against her own automobile liability insurer, Milwaukee Insurance Company, praying for judgment against it under the uninsured motorist provision of the policy. Milwaukee responded by answer, generally denying the allegations of plaintiff, and coupled therewith a third party demand against the tortfeasor, Ashley, who has never been served with process in the suit. Hence, the only parties to the litigation are plaintiff and her insurer, Milwaukee.

The facts of the accident, i. e., a rear-end collision, are not in dispute and it is established that the mishap resulted solely from the negligence of Ashley. It is also conceded that Milwaukee is responsible to plaintiff under the uninsured motorist provision of its policy for any injuries she might have sustained as a result of the collision. Accordingly, the sole question presented to the lower court for decision was whether or not plaintiff sustained injuries and, if she did, the extent of those injuries.

The trial judge, after hearing the evidence, was of the opinion that plaintiff's claim ($15,000 for personal injuries and $203.75 for medical expenses) was highly inflated as the evidence indicated " * * that this was a very minor accident, and that the plaintiff suffered very minor injuries. * * *" He therefore awarded plaintiff a judgment of $400 representing an allowance of $250 for personal injuries and $150 for medical expenses incurred. Plaintiff applied for a new trial averring principally that the judgment was contrary to the law and the evidence and annexed thereto the affidavits of two Shreveport physicians which purportedly confirmed the clinical findings of plaintiff's physician and stated that his bill for services rendered was reasonable. The application was denied.

Plaintiff then appealed to the Court of Appeal, Second Circuit, contending that the award was grossly inadequate and contrary to the uncontradicted proof. That court affirmed (see Olds v. Ashley, La.App., 191 So.2d 202) and, at plaintiff's behest, we granted certiorari. The matter has now been argued and submitted for our decision.

Forasmuch as the only evidence adduced in the case was submitted by plaintiff and her supporting witnesses, the facts of the case are not and cannot be seriously disputed nor do we find the credibility of the witnesses appreciably impaired. The acci-

dent, as stated, occurred on the morning of August 18, 1964 in the city of Shreveport when plaintiff's automobile was struck from the rear by a car driven by Ashley, while plaintiff, a 20-year old former resident of Shreveport, was driving to work. Plaintiff testified, in substance, that she was dazed by the impact and that, when the police arrived, she sat in the car with the officer who made a report of the accident. She then left the scene and went to work where she remained for about five minutes. She says that her head and neck were hurting badly at that time so she went to Dr. J. Richard Brown at the Willis-Knighton Hospital, where an X-ray was taken; that thereafter she stayed home from work for two weeks due to the pain in her neck and that, on August 21, 1964, acting upon the advice of her fiance (whom she has since married) she was examined and treated by Dr. James W. Tucker, a qualified surgeon practicing in Shreveport. She avouched that she went back to work after a two week period and that, due to the pain in her neck, she could not do her secretarial job steadily as she was constantly bothered with neck pains, back pains and headaches and that, while she had practically recovered from her injuries at the time of trial, for a period of 18 months after the accident, long hours of typing work or a bus trip would aggravate her injury to the extent that it caused her pain and discomfort.

Plaintiff's testimony was corroborated in the main by Dr. James W. Tucker, who treated her on at least three occasions. Dr. Tucker stated that plaintiff first visited him on August 21, 1964 " * * * with a history that she had been in an automobile accident on the 18th, and had injured her neck and head and right shoulder and lower back and the right leg."; that he took three X-ray pictures of her injuries and his examination revealed a " * * * rigid right shoulder, neck and back. And the patient appeared to be in pain; had multiple discolored areas of hematoma. Examination of the neck revealed spasm of the posterior cervical muscles. Neck was maintained in a rigid posture. She resisted all attempts to move the neck at that time. The pains radiating into the posterior occipital area were intermittent over the occipital second cervical area. Trapezius muscles were in spasm. There was a discolored area of the right shoulder with some swelling and spasm. There was a tenderness over the latissimus dorsimuscle on the right and the pectoralis major muscle. There was limitation of flexion of the lumbar area with spasm. Tenderness over the lumbosacral joint. Patient complained of dizziness and seemed to be unstable when the head was lowered. Examination of the right knee revealed some swelling with a hematoma of the right leg. Some increase in fluid in the right knee at the time. The only posi-

tive finding on the X-rays would be some loss of the normal lordotic curve of the cervical vertebrae." When asked to give his diagnosis of plaintiff's injuries the doctor replied:

"Cerebral concussion mild with residual dizziness and headaches; cervical dorsal sprain severe, with radicular pain into the shoulder area and sprain of the right shoulder joint; contusion of the latissimus dorsimuscle and pectoralis major muscle with hematoma to the lumbosacral area and sprain of the right knee joint."

Dr. Tucker further testified that he saw plaintiff again on October 8th and again on December 7th and that she had called him on various occasions with regard to her injury and to get medication therefor. He said that he last saw plaintiff on November 22, 1965 and that, at that time, she stated to him that her condition had improved although there was still a residual neck difficulty. The doctor, however, declared in another part of his testimony that " *   * she has recovered completely except for minimal residuals, which would be mild discomfort at times. And that maybe a very mild permanent type thing." When asked if there was a permanent residual, he stated that it was very mild and would not incapacitate her.

Plaintiff also produced Officer N. M. Green of the Shreveport Police Department, who was called to the scene of the accident shortly after its occurrence. He stated that it was raining heavily on that morning and Ashley admitted that his car ran into the rear of plaintiff's Buick convertible, stating he saw the car in front of him but was unable to stop because the street was wet with rain. On cross-examination he was asked but one question, i. e., whether his police report showed that anyone involved in the accident had been injured. The witness answered "No sir".

Another witness of plaintiff, James E. Franklin, Jr., is a Shreveport attorney formerly associated with the law firm of Lynch & Rogers. He testified that plaintiff had worked for the firm for several months after the accident and that, on three or four occasions over a period of a month and a half, she requested him to give her a muscle relaxant to relieve the pain in her neck and head. Mr. Franklin explained that he was using muscle relaxants during that period (January of 1965), as he had been in an automobile accident and kept them in his desk drawer.

Mrs. D. L. Olds, mother of the plaintiff, testified that subsequent to the accident she had observed her daughter suffering and in pain and that plaintiff complained of headaches and backaches all of the time. She also stated that there were occasions during which her daughter was unable to go to work as a result of her pain and that almost every evening when she came home

from work she would complain of headaches and retire to her room.

Notwithstanding this uncontradicted testimony, the district judge indicated in his reasons for judgment his belief that plaintiff's injuries were grossly exaggerated and he further declared that he did not give any credence to the testimony of Dr. Tucker because Dr. Tucker's testimony in other cases " * * * has been exactly like his testimony in this case, cases in which the injury has not been serious, cases in which the only claim for injury can be what is referred to as a whiplash, a back injury, or a neck injury, or a head injury by virtue of being rammed in the rear by somebody else's automobile." In other words, the judge undertook to impeach Dr. Tucker's testimony on the basis of evidence the doctor had given in other cases and not from any evidence, medical or otherwise, of a contradictory nature that had been adduced in the case at bar.

■■ This, we find the judge was without right to do. For it is a familiar rule of law, approved time and time again by this Court, that evidence of witnesses which stands uncontradicted, as in this case, must

be accepted as true. Miller v. Hartford Live Stock Insurance Co. Inc., 165 La. 777, 116 So. 182; Bonanno v. Decedue, 186 La. 1041, 173 So. 756; Cockrell v. Penrod Drilling Company, 214 La. 951, 39 So.2d 429; Coleman v. Manufacturers Casualty Insurance Co., 229 La. 105, 85 So.2d 47 and Farley v. Ryan Stevedoring Co., 238 La. 1048, 117 So.2d 587. See also the following cases from the Courts of Appeal: Miranne v. State Farm Mut. Auto Ins. Co., 54 So. 2d 538; Turner v. Southern Industries Company, 88 So.2d 238; Fee v. Calcasieu Paper Co., 89 So.2d 434; Faslund v. Kendrick, 169 So.2d 276 and Campo v. La Nasa (on rehearing), 173 So.2d 365.[1]

Nevertheless, the views of the trial judge were wholly approved by the Court of Appeal without, we think, any foundation in law on the record presented. That Court rejected not only the evidence of Dr. Tucker but also plaintiff's testimony and that of her witnesses which, as we have stated, stands uncontradicted. The Court of Appeal concluded that the testimony of plaintiff was " * * * vague, inconsistent and unconvincing. The testimony of the medical witness appears to be unreasonable and grossly exaggerated."[2]

1. Compare Hudson v. Arceneaux (La. App.) 169 So.2d 731, cited by counsel for Milwaukee, where the statement of the witness, whose testimony was found to be incredible, was in conflict with the evidence of three disinterested eye witnesses. See also the critical analysis of the views of the Court of Appeal, Third Circuit, in the Arceneaux case, by Professor George W. Pugh in Vol. XXVI, Louisiana Law Review, 618–620.

2. As a predicate for the rejection of plaintiff's testimony and that of her witnesses, both of the lower courts seem to have derived some sort of corroborative comfort for their conclusions in the nega-

■ From our examination of the record, we do not agree with these conclusions. We are of the opinion that the uncontroverted facts establish that plaintiff suffered a whiplash injury to her head, neck and back, from which she endured pain and suffering intermittently for several months, and we hold that the trial judge clearly abused the discretion vested in him by granting her the nominal sum of $250 as compensatory damages for her injuries. Further, we find the record shows that plaintiff incurred actual expenses for treatment and medication in the sum of $203.75, as claimed in her petition. These medical expenses consist of the following items: Dr. Richard Brown, $15.00 and Willis-Knighton Hospital, $25.00 (these expenses were stipulated by opposing counsel) and Dr. James W. Tucker, $163.75 (Dr. Tucker testified that his total bill for services rendered amounted to $186.00 but, since plaintiff claims only $163.75, she is bound by the allegations of her petition).

■ This leaves only for discussion the proper quantum of damages to be awarded for plaintiff's pain and suffering. Mind-

ful of this Court's decision in Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964) that awards in cases involving similar injuries are relevant only to determine whether the award is so excessive or inadequate as to constitute an abuse of discretion, we consider the following cases, all of which have been decided after Cassreino v. Brown (La.App.) 144 So.2d 608, wherein a doctrine of uniformity (now discarded) was enunciated for fixing the measure of damages in whiplash cases.

In the Ballard case $750.00 was awarded for whiplash, where an electric vibrator was used on plaintiff's neck, no medication was administered and no pain suffered, only numbness and later soreness of neck which lasted four or five days, together wtih headaches which lasted off and on for about a month. The other award in the Ballard case was in the amount of $2500. That plaintiff was hospitalized for 14 days and given physiotherapy treatment for two months but suffered no permanent injury.

In Winfree v. Consolidated Underwriters, 246 La. 981, 169 So.2d 71, an $8,000 judg-

---

tive answer given by the police officer to the single question propounded on cross-examination, whether the police report showed that anyone involved in the accident had been injured. The trial judge and the Court of Appeal imply that the fact that the report did not show that plaintiff was injured, indicates that she was not. However, we do not think that the circumstance that the officer's report

does not show that anyone was injured in the accident can be regarded as a basis for an assumption that plaintiff was not injured because it may be that the officer merely neglected to state in his report that plaintiff was hurt or, perhaps, since plaintiff was in a dazed condition, as she testified, she did not tell him of her injuries or maybe she did not know at that time that she was actually injured.

ment in favor of the husband was reduced to $3,000 for moderate whiplash, requiring only conservative treatment with muscle relaxants, pain drugs and several physiotherapy treatments. A judgment in favor of the wife for $3,000 for whiplash injury was reduced $1500 for slight pain which was cured without residuals in a few months. Duration of the residuals was 11 months.

In Smith v. Marquette Casualty Company (La.App.) 169 So.2d 750 (affirmed 247 La. 1054, 176 So.2d 133), $2500 was awarded for approximately one year of pain and suffering from lumbosacral and cervical sprain. Plaintiff was hospitalized for a total of 23 days.

Miller v. Central Mutual Insurance Company (La.App.) 174 So.2d 280, $1,000 and $1250 for two passengers who suffered contusions, low back and neck pains, which persisted for three and one-half months.

Ballanga v. Hymel, 247 La. 934, 175 So. 2d 274, $700 for mild whiplash injury which did not require plaintiff to be hospitalized and no residual disability or discomfort.

Evans v. Phoenix Insurance Company (La.App.) 175 So.2d 425, increases from $500 to $1,000 for 77-year old woman for whiplash lasting seven weeks; from $750 to $1,000 for 11-year old child for injuries to neck, hospitalized for five days and from $1,000 to $1,250 for another plaintiff for similar injury lasting somewhat longer with hospitalization for three days.

Robinson v. American Home Assurance Company (La.App.) 183 So.2d 77, awards increased from $500 to $1,250 and from $600 to $1,200. Both plaintiffs were hospitalized for three days for acute cervical strain and myositis of trapezius muscle. They suffered pain for 11 months after the accident, but there was no residual disability.

There are, of course, many more decisions of like tenor but we only cite the foregoing to show that there is a clear abuse of discretion existing in the case at bar under the facts of record. After a careful consideration of the injuries sustained by plaintiff, we feel that an award of $1,800 will adequately compensate her for the pain and suffering she has endured.

For the reasons assigned, the judgment of the district court, which was affirmed by the Court of Appeal, is amended by increasing the amount thereof in favor of plaintiff to the sum of $2,003.75, and, as thus amended, it is affirmed. All costs are to be paid by Milwaukee Insurance Company.